# VIRGINIA AUSTER *v.* NORWALK UNITED METHODIST CHURCH
## (AC 25390)

Lavery, C. J., and McLachlan and Berdon, Js.*

Argued November 30, 2005—officially released April 4, 2006

* The listing of judges reflects their status on this court as of the date of oral argument.

618

Robert C. E. Laney, with whom, on the brief, were *Charles A. Deluca* and *Sarah F. DePanfilis*, legal intern, for the appellant (defendant).

*Robert F. Maslan, Jr.*, with whom was *Francis J. DiScala, Jr.*, for the appellee (plaintiff).

*Opinion*

McLACHLAN, J. The plaintiff, Virginia Auster, brought this action pursuant to General Statutes § 22-357[1] to recover damages for personal injuries alleged to have been caused by the dog of an employee of the defendant, Norwalk United Methodist Church. After a jury trial, the verdict was returned in favor of the plaintiff, and the defendant appealed. On appeal, the defendant claims that the trial court improperly (1) failed to set aside the verdict because there was insufficient evidence for the jury to have concluded that the defendant was a "keeper" of the dog that bit the plaintiff, (2) refused to instruct the jury that control of the premises where the dog bite occurred or control of the owner of the dog is insufficient to impose liability on the defen-

---

[1] General Statutes § 22-357 provides: "If any dog does any damage to either the body or property of any person, the owner or keeper, or, if the owner or keeper is a minor, the parent or guardian of such minor, shall be liable for such damage, except when such damage has been occasioned to the body or property of a person who, at the time such damage was sustained, was committing a trespass or other tort, or was teasing, tormenting or abusing such dog. If a minor, on whose behalf an action under this section is brought, was under seven years of age at the time the damage was done, it shall be presumed that such minor was not committing a trespass or other tort, or teasing, tormenting or abusing such dog, and the burden of proof thereof shall be upon the defendant in such action."

dant under § 22-357 and (3) allowed admission of evidence concerning the defendant's insurance coverage at the time of the dog bite. We agree with the defendant as to the first and third issues and reverse the judgment of the trial court.[2]

The defendant is located on West Avenue in Norwalk and consists of a church building, a parish house and an education building. Pedro Salinas was an employee of the defendant and lived in an apartment in the parish house with his family.[3] Salinas was the owner of the dog that attacked the plaintiff. On July 27, 2000, the plaintiff arrived at the premises to attend a meeting scheduled for 7:30 p.m. in the parish house. The plaintiff was early for the meeting, and when she arrived, the front door of the parish house was locked. The plaintiff walked around to the side of the parish house to find someone to unlock the door. She went to the side stairway that led up to Salinas' living quarters. There was a landing on the top of the stairway that led to an indoor porch that connected to Salinas' kitchen. When the plaintiff reached the top of the stairway, she raised her voice to see if anyone was home at Salinas' residence. At that time, the dog appeared at the porch doorway. The bottom panel of the porch door was either broken or missing. While the plaintiff was at the doorway, the dog ran through the opening and bit the plaintiff on her leg. The plaintiff sought to recover damages from the defendant as "keeper" of the dog pursuant to § 22-357. The jury returned a verdict in favor of the plaintiff on count one of the complaint,[4] and she was awarded damages totaling $142,832.37. The defendant appeals.

---

[2] In light of our ruling, we will not address the second issue raised on appeal.

[3] As part of Salinas' compensation, he and his wife and four children were provided housing in an apartment in the rear of the parish house. He did not have a written lease with the defendant.

[4] Count one set forth a cause of action against the defendant under General Statutes § 22-357. The jury was instructed that if it found in favor of the plaintiff on count one, it need not return a verdict on count two. Count two was based on common-law negligence.

The first issue on appeal is whether the court should have set aside the verdict on the ground that there was insufficient evidence for the jury to have concluded under § 22-357 that the defendant was the "keeper" of the dog that bit the plaintiff. We conclude that the court should have set aside the verdict.

"We begin with a brief discussion of the appropriate standard of review. The trial court possesses inherent power to set aside a jury verdict which, in the court's opinion, is against the law or the evidence. . . . [T]he proper appellate standard of review when considering the action of a trial court granting or denying a motion to set aside a verdict . . . [is] the abuse of discretion standard. . . . In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done. . . . A court is empowered to set aside a jury verdict when, in the court's opinion, the verdict is contrary to the law or unsupported by the evidence." (Citations omitted; internal quotation marks omitted.) *O'Connor* v. *Board of Education*, 90 Conn. App. 59, 63–64, 877 A.2d 860, cert. denied, 275 Conn. 912, 882 A.2d 675 (2005). "Although the trial court's decision in this regard is entitled to great weight . . . where it is clear that the jury could not reasonably and logically have reached the conclusion [it] did, the court's refusal to set aside the verdict rendered will not be sustained." (Citations omitted.) *Labatt* v. *Grunewald*, 182 Conn. 236, 240–41, 438 A.2d 85 (1980).

The plaintiff claims that the defendant is liable for her injuries because it qualifies as a "keeper" under § 22-357. "General Statutes § 22-357 imposes strict liability on the owner or keeper of any dog that does damage to the body or property of any person. A keeper is defined as any person, other than the owner, harbor-

ing or having in his possession any dog. General Statutes § 22-327. To harbor a dog is to afford lodging, shelter or refuge to it. . . . Webster's Third New International Dictionary. [P]ossession cannot be fairly construed as anything short of the exercise of dominion and control [over the dog] . . . ." (Citation omitted; internal quotation marks omitted.) *Falby* v. *Zarembski*, 221 Conn. 14, 19, 602 A.2d 1 (1992). Applying these definitional principles to the facts of this case, we conclude that there was insufficient evidence to establish that the defendant was a "keeper" under § 22-327.

Salinas was solely responsible for the care of his dog.[5] The defendant did not feed, water or house the dog. The dog resided only in Salinas' living quarters, either in the apartment, on the porch or chained to the steps leading to the apartment, and did not roam freely around the defendant's property. Accordingly, the defendant did not harbor the dog, nor did it possess the dog.

"[I]n order to harbor or possess a dog, some degree of control over the dog must be exercised." *Buturla* v. *St. Onge*, 9 Conn. App. 495, 498, 519 A.2d 1235, cert. denied, 203 Conn. 803, 522 A.2d 293 (1987). Although the defendant owned the premises, control over the premises where the dog inflicted the injuries did not convert the defendant into a "keeper" of the dog for purposes of statutory liability.[6] See *Falby* v. *Zarembski*,

---

[5] Salinas testified that the defendant's officials never fed or gave water to the dog. David Houston, the pastor from 1992 until May, 1999, testified that the defendant did not provide any care for the dog. Pastor James Stinson, who was the pastor at the time of the incident, also testified that no officials or trustees of the defendant ever cared for the dog in any capacity.

[6] We note that although the defendant did not have a written lease with Salinas, the nature of the relationship was similar to that of a landlord-tenant relationship. This court held in *Stokes* v. *Lyddy*, 75 Conn. App. 252, 267, 815 A.2d 263 (2003), that a "landlord, however, is not a 'keeper' of a dog merely because a tenant owns a dog and keeps the dog on the premises." To determine who is a "keeper" of a dog, the analysis relies on the degree of control exerted over the dog.

supra, 221 Conn. 19–20. The plaintiff argues that the defendant exercised control over the dog by placing restrictions on when and where the dog could go outside of the living quarters,[7] thus making the defendant a "keeper." We are unable to find, nor does the plaintiff cite, any case law that supports this proposition. There is, however, case law that provides some guidance on what possession and control mean under § 22-357. "[P]ossession cannot be fairly construed as anything short of the exercise of dominion and control similar to and in substitution for that which ordinarily would be exerted by the owner in possession." *Hancock* v. *Finch*, 126 Conn. 121, 123, 9 A.2d 811 (1939). Here, the defendant did not exercise control over the dog in a manner similar to that which would ordinarily be exerted by the owner. In *Murphy* v. *Buonato*, 42 Conn. App. 239, 244, 679 A.2d 411 (1996), aff'd, 241 Conn. 319, 696 A.2d 320 (1997), this court reasoned that a plaintiff who had assumed sole responsibility to feed, water, walk and provide shelter for a dog in his home on a temporary basis qualified as a "keeper." The defendant in this case did nothing remotely close to those activities and, thus, did not exercise control similar to that of the owner. The defendant did not exercise dominion and control over the dog in any manner other than by placing a limit on when and where Salinas could let his dog outside. This minimal regulation is insufficient to establish that the defendant had control or possession of the dog. Furthermore, a review of the laws in sibling states would indicate the same result. See annot., Landlord's Liability to Third Person for Injury Resulting From Attack on Leased Premises by Dangerous or Vicious Animal Kept by Tenant, 87 A.L.R.4th 1004, § 24 (1991).

---

[7] The defendant required that Salinas keep the dog inside the living quarters during the day, and allowed the dog to be chained to a railing on the steps leading to the living quarters between 6 p.m. and 7 a.m.

Accordingly, we conclude that the defendant was not a "keeper" of the dog as provided in § 22-327.[8]

The defendant also claims on appeal that the admission of evidence of its liability insurance coverage was improper.[9] We agree. "It is well established that a trial court has broad discretion in ruling on the admissibility [and relevance] of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . Every reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion." (Internal quotation marks omitted.) *State* v. *Spiegelmann*, 81 Conn. App. 441, 448, 840 A.2d 69, cert. denied, 268 Conn. 921, 846 A.2d 882 (2004).

Connecticut Code of Evidence § 4-10 provides: "(a) General Rule. Evidence that a person was or was not insured against liability is inadmissible upon the issue of whether the person acted negligently or otherwise wrongfully. (b) Exception. This section does not require the exclusion of evidence of insurance against liability when offered for another purpose, such as proof of agency, ownership, or control, or bias or prejudice of a witness." Here, the probative value of the defendant's liability insurance was outweighed by its prejudicial impact. The plaintiff argued in her brief and at trial that

---

[8] There are a number of Superior Court cases cited by the defendant, including *May* v. *Scherber*, Superior Court, judicial district of New Haven, Docket No. 311874 (February 10, 1993) (condominium association's regulations controlling when condominium owners could use common areas for pets did not make association "keeper"), that have interpreted possession and control in a similar manner.

[9] Two statements were made at the defendant's July 16, 2001 trustees' meeting regarding the defendant's insurance coverage. Minutes of the trustees meeting were admitted during the trial. The first statement was that "the lawsuit has been turned over to the underwriter by the insurance company." The second statement was that having the dog on the premises "could jeopardize our [the defendant's] insurance coverage."

the evidence of the insurance coverage was relevant to show control of the premises. The defendant, however, is the undisputed owner of the premises; moreover, evidence that the defendant owned the property does not tend to establish that the defendant had control over the dog pursuant to § 22-357. Accordingly, evidence of the defendant's liability insurance was irrelevant and prejudicial.

The judgment is reversed and the case is remanded for a new trial on the issue of common-law negligence.

In this opinion LAVERY, C. J., concurred.

BERDON, J., dissenting. I respectfully disagree with the majority. As the majority recognizes, our standard of review "when considering the action of a trial court granting or denying a motion to set aside a verdict . . . [is] the abuse of discretion standard. . . . In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done." (Internal quotation marks omitted.) *Menon* v. *Dux*, 81 Conn. App. 167, 173, 838 A.2d 1038, cert. denied, 269 Conn. 913, 852 A.2d 743, cert. denied, 543 U.S. 1003, 125 S. Ct. 623, 160 L. Ed. 2d 463 (2004). By reversing the trial court's refusal to set aside the verdict, I believe the majority has failed to abide by that standard of review.

The undisputed facts are as follows. The plaintiff, Virginia Auster, was injured by a mixed breed pit bull dog owned by Pedro Salinas. Salinas was employed by the defendant, Norwalk United Methodist Church, and, as part of his employment, was given living quarters in the parish house wherein the pit bull was housed. Prior to the incident in which the plaintiff was injured, the pit bull had attacked another person. As a result of that

prior incident, the defendant instructed Salinas that the pit bull had to be kept inside the living quarters during the day and had to be chained to a railing leash when allowed outside the living quarters between 7 p.m. and 6 a.m. After the plaintiff was attacked, the defendant required that Salinas remove the pit bull from its premises.

General Statutes § 22-357 provides that "the owner or *keeper* [of a dog] . . . shall be liable for [any damage done by that dog] . . . ." (Emphasis added.) General Statutes § 22-327 (6) defines a "[k]eeper" as "any person, other than the owner, harboring or having in his possession any dog . . . ." A "harborer" of a dog is one who treats a dog as living in his home and undertakes to control the dog's actions. *Buturla* v. *St. Onge*, 9 Conn. App. 495, 497, 519 A.2d 1235, cert. denied, 203 Conn. 803, 522 A.2d 293 (1987); see *Falby* v. *Zarembski*, 221 Conn. 14, 20 n.3, 602 A.2d 1 (1992).

In this case, the living quarters of Salinas were not rented to him but were part of the defendant's premises. The living quarters were a portion of the first floor of the parish house and the basement. The remainder of the building was occupied by the rector. It is obvious that the defendant afforded shelter to Salinas and the pit bull.

Control of the offending dog, the second element, is the key issue in determining whether the dog was harbored by the defendant. In this case, that control clearly was demonstrated by the defendant when Salinas was instructed that the pit bull was allowed out of the apartment under certain conditions and ultimately when Salinas was directed to remove the dog from the property of the defendant after the dog bit the plaintiff, which was three months prior to the time Salinas vacated the premises. As a matter of law, it is clear

in this case that the defendant was a harborer of the offending dog.

The final issue raised by the defendant was the admissibility of liability insurance before the jury. The majority correctly cites to the exception in Connecticut Code of Evidence § 4-10 with respect to insurance, which provides that such evidence is admissible when "offered for another purpose" such as "control . . . ." Conn. Code Evid. § 4-10 (b). Simply put, it was admissible when offered to show control of the offending dog.

Respectfully, for the foregoing reasons, I would affirm the judgment of the trial court.