NATHAN JACKSON *v.* WATER POLLUTION CONTROL
AUTHORITY OF THE CITY OF
BRIDGEPORT ET AL.
(SC 17369)

Borden, Norcott, Katz, Palmer and Vertefeuille, Js.

Argued March 9—officially released June 27, 2006

*Thomas J. Weihing*, with whom, on the brief, were *John T. Bochanis* and *Benjamin Aponte*, for the appellant-appellee (plaintiff).

*John P. Bohannon, Jr.*, for the appellee-appellant (named defendant).

*Opinion*

NORCOTT, J. The plaintiff, Nathan Jackson, brought this action against the named defendant, the water pollution control authority of the city of Bridgeport,[1] to recover damages for discrimination on the basis of race and physical disability in violation of the Connecticut Fair Employment Practices Act (act), General Statutes § 46a-51 et seq.[2] Following a jury trial, the plaintiff

---

[1] Also named as a defendant was Professional Services Group, Inc. (Professional), a company hired by the city of Bridgeport to privatize the water pollution control authority's operations. Professional did not, however, appear in either the trial court or this court, and a default judgment for failure to appear was entered against it on count four of the plaintiff's complaint, which alleged breach of the contract between Professional and the city of Bridgeport, under which the plaintiff was a third party beneficiary. The trial court left the issue of the plaintiff's damages to the jury, and the jury awarded the plaintiff $50,000 damages against Professional. The judgment against Professional has not been challenged on appeal. Although the record is silent regarding the reason for Professional's absence, it is clear that, although Professional agreed to run the water pollution control authority's operations for twenty-two years, it no longer continues to do so. Hereafter, all references in this opinion to the defendant are to the water pollution control authority.

[2] Specifically, the plaintiff contends that he suffered discrimination in violation of General Statutes § 46a-60, which provides in relevant part: "(a) It shall be a discriminatory practice in violation of this section:

"(1) For an employer, by the employer or the employer's agent, except in the case of a bona fide occupational qualification or need, to refuse to hire or employ or to bar or to discharge from employment any individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment because of the individual's race,

appeals, claiming that the trial court improperly: (1) precluded the jury from awarding him damages after it found that the defendant had discriminated against him; and (2) precluded him from introducing evidence regarding the value of his lost right to "bump" more junior employees. The defendant cross appeals, contending that the trial court improperly denied its motion to set aside the jury's findings that the defendant: (1) discriminated against the plaintiff on the basis of physical disability; and (2) executed a settlement agreement with the plaintiff as a pretext for unlawful discrimination.[3] We affirm the judgment of the trial court.

The record reveals the following facts and procedural history. The plaintiff began his employment for the city of Bridgeport (city) in 1985 as an attendant at the Beardsley Park Zoo, where he worked for approximately two years. Thereafter, the plaintiff transferred to the city's department of public works, which later became the defendant. The defendant and its predecessor employed the plaintiff as a street sweeper and sewer well cleaner,[4] in which capacity he suffered injuries to his knee, back and ankle. The plaintiff received workers' compensation for his injuries.

color, religious creed, age, sex, marital status, national origin, ancestry, present or past history of mental disability, mental retardation, learning disability or physical disability, including, but not limited to, blindness . . .

"(4) For any person, employer, labor organization or employment agency to discharge, expel or otherwise discriminate against any person because such person has opposed any discriminatory employment practice or because such person has filed a complaint or testified or assisted in any proceeding under section 46a-82, 46a-83 or 46a-84 . . . ."

[3] The plaintiff appealed and the defendant cross appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeals to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[4] The plaintiff's official employment designation with the defendant was "Laborer II," which the plaintiff described as "shoveling dirt . . . pulling the weeds from around the building . . . digging streets, [and] digging sewers . . . ."

In December, 1993, the plaintiff became involved in a labor dispute with the defendant, which ultimately resulted in the termination of his employment. The plaintiff, pursuant to the collective bargaining agreement then in effect between the defendant and the plaintiff's labor union, appealed from his termination to the state board of mediation and arbitration, which, in November, 1994, reduced the termination to a fifteen day suspension and ordered that the plaintiff be reinstated. The defendant failed, however, to return the plaintiff to work and he filed complaints with the state board of labor relations (labor board) and the commission on human rights and opportunities (commission), alleging that he had not been returned to work because of the defendant's discrimination against him on the basis of his race and physical disabilities.

On January 29, 1997, the plaintiff and the defendant met, along with an agent of the labor board, to resolve the plaintiff's complaints. At that time, the parties entered into a settlement agreement (agreement), pursuant to which the plaintiff agreed to withdraw his pending claims of discrimination and the defendant agreed to rehire the plaintiff as a sewage plant attendant. The agreement also provided that the parties would negotiate the amount of back pay that was owed to the plaintiff and, in the event that they could not agree, that the issue would be resolved by the commission.[5] The plaintiff repeatedly professed during negotia-

[5] The handwritten agreement provides in its entirety: "In settlement of [the plaintiff's pending claims] the parties agree as follows:

"[The plaintiff] will begin work on February 3, 1997 as [s]ewage [p]lant [a]ttendant.

"The [defendant] and union will resolve the back pay issue due to [the plaintiff]. If the parties are unable to agree on the back pay settlement, this complaint will be refiled on that issue only.

"[The plaintiff] shall withdraw the pending [commission] matter, and all grievances with prejudice, and the [defendant] shall receive credit for payment of amounts paid to [the plaintiff] pursuant to this agreement as against any claim for [workers'] compensation benefits, with appropriate exceptions made for a specific award. The [defendant] shall likewise be entitled to a

tions that, despite his injuries, he was capable of performing the significant physical labor required of a sewage plant attendant.[6]

The plaintiff worked for the defendant as a sewage plant attendant until March 19, 1997, at which time the defendant suspended his employment, citing the plaintiff's "physical limitations in connection with certain job [functions] . . . ." The defendant informed the plaintiff of his suspension in a letter entitled "[r]elease [f]rom [d]uties [w]ithout [p]ay," citing its concern for his physical welfare and claiming that it wished to have a physician assess his medical condition.[7] The defendant made no effort, however, to evaluate the plaintiff's physical condition since that time, and the plaintiff has been employed as a furniture mover since his 1997 suspension.

set off for any and all amounts paid to [the plaintiff] as unemployment compensation."

[6] The plaintiff described some of his duties as follows: "[T]here was a pool, a cesspool, with grease on top of it that's collected where the sewage comes through the sewage system, the grease and everything and debris goes into one section and the raw sewage goes into another section. So you have to skim the debris off the top of the sludge tank and in order to do that job you have to hold the hose that's like fifty pounds in weight once the water and the sludge starts going through it over the top of a tank and skim it off the top."

[7] The letter, signed by Andrew S. Abate, general manager of the defendant, provides in its entirety: "Dear Mr. Jackson:

"It has come to my attention that you are claiming substantial limitations with regards to the types of job duties you are physically able to perform. Just prior to your return to work several weeks ago, however, you represented to both [c]ity [o]fficials and the [s]tate [l]abor [b]oard that you were free of any physical problems that would in any way impair your ability to perform the duties of the job of [s]ewage [t]reatment [p]lant [a]ttendant.

"Since you are now claiming physical limitations in connection with certain job [f]unctions, it will be necessary for the [c]ity to reassess your situation.

"In order to assure the preservation of your own safety and physical welfare, I am instructing you not to return to work until the [c]ity is able to have a physician assess your medical condition."

The defendant contracted with Professional Services Group, Inc. (Professional); see footnote 1 of this opinion; to privatize its operations on March 27, 1997. At that time, the defendant laid off nearly all of its employees, who were then immediately hired by Professional. Unlike other employees of the defendant, however, the plaintiff did not learn of the privatization until approximately two years after it had occurred because notice was mailed to the plaintiff at the defendant's offices, where he was not working because of his suspension, rather than to his home.

After receiving the statutorily required release from the commission; see General Statutes §§ 46a-100 and 46a-101; the plaintiff brought the present action for damages, claiming that the defendant's discharge and suspension of the plaintiff: (1) constituted discrimination on the basis of race and physical disability in violation of General Statutes § 46a-60 (a) (1); (2) constituted discrimination on the basis of physical disability in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.; (3) were committed in retaliation for his filing a complaint with the commission in violation of § 46a-60 (a) (4); and (4) violated the privatization agreement between the city and Professional.

At trial, the court precluded the plaintiff from presenting evidence of discrimination predating the agreement, including evidence regarding the 1993 termination. The trial court reasoned that, in the event that the agreement was enforceable and not, as the plaintiff contended, a pretext for unlawful discrimination designed to procure withdrawal of his complaint with the commission, the agreement should be enforced according to its terms.[8] The plaintiff has not challenged that ruling on appeal.

[8] In explaining its oral ruling to bifurcate the proceedings, the trial court stated: "[T]o the extent that that agreement is valid and enforceable then the claims resolved in it have been released. . . . To the extent that the jurors find that it isn't valid it is not enforceable, it was entirely a pretext

At the close of the plaintiff's case-in-chief, the trial court granted the defendant's motion for nonsuit on the plaintiff's federal discrimination claim pursuant to General Statutes § 52-210,[9] and the plaintiff has not challenged that ruling. The plaintiff's remaining state law claims were presented to the jury, which, according to the submitted interrogatories, found that the defendant neither discriminated against the plaintiff on the basis of race, nor retaliated against him for filing a complaint with the commission. The jury did find, however, that the defendant had discriminated against the plaintiff on the basis of physical disability in violation of § 46a-60 (a) (1). The jury further found that the defendant had entered into the agreement as a pretext for discriminating against the plaintiff. The jury awarded the plaintiff economic damages of $2100 from the defendant.

Despite the jury's finding that the agreement was a pretext for unlawful discrimination, the trial court declined to allow the jury to award damages for back pay. Instead, the trial court concluded that the plaintiff "is entitled to receive what he would have otherwise received and been entitled to in the absence of what the jury is finding to have been an unlawful employment activity. He is entitled to have his complaint filed before the labor board and he's entitled to have the labor board address his issue and have the labor board award him

or a fabrication, then we'll bifurcate the issue and then there will be further evidence on the consequences of that finding."

[9] General Statutes § 52-210 provides: "If, on the trial of any issue of fact in a civil action, the plaintiff has produced his evidence and rested his cause, the defendant may move for judgment as in case of nonsuit, and the court may grant such motion, if in its opinion the plaintiff has failed to make out a prima facie case."

"We note that [a] motion for judgment of dismissal has replaced the former motion for nonsuit [pursuant to § 52-210] for failure to make out a prima facie case." (Internal quotation marks omitted.) *Grondin* v. *Curi*, 262 Conn. 637, 647–48 n.12, 817 A.2d 61 (2003). In evaluating such a motion, "the question is whether sufficient facts were proved to make out a prima facie case." (Internal quotation marks omitted.) Id.

the back pay to the extent to which he's entitled to it pursuant to the parties' agreement of 1997." The plaintiff moved to set aside the verdict and for a new trial, claiming that the trial court improperly: (1) prevented the jury from awarding the plaintiff back pay; (2) excluded evidence regarding the plaintiff's 1994 termination; (3) excluded certain evidence from the plaintiff's workers' compensation agreement; (4) precluded the plaintiff from discussing his " 'bumping rights' " at final argument; (5) allowed the defendant to introduce evidence regarding formation of the agreement; and (6) granted the defendant's motion for a directed verdict on the plaintiff's third party beneficiary claim. The court denied his motions. The defendant also moved to set aside the verdict, claiming that the plaintiff adduced insufficient evidence to prove that: (1) he was discriminated against in violation of the act; and (2) the agreement was a pretext for unlawful discrimination. The trial court denied the motion and rendered judgment accordingly.

This appeal and cross appeal followed. On appeal, the plaintiff contends that the trial court improperly precluded the jury from awarding damages arising from the agreement, and also that it improperly prevented him from introducing evidence regarding the value of his lost " 'bumping rights,' " that is, his right to remain at work in place of less senior employees in the event of a layoff. The defendant cross appeals, claiming that the trial court improperly declined to set aside the jury's findings that it had discriminated against the plaintiff on the basis of physical disability and in executing the agreement. Additional facts are set forth as necessary.

I

CROSS APPEAL: THE DEFENDANT'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT

We first address the defendant's contentions, on cross appeal, that the trial court improperly denied its

motion to set aside the jury's findings that it had discriminated against the plaintiff on the basis of physical disability and that the agreement was a pretext for unlawful discrimination. We begin with the cross appeal because, if the defendant prevails, the plaintiff's appeal will be rendered moot.

"The standard of review governing our review of a trial court's denial of a motion to set aside the verdict is well settled. The trial court possesses inherent power to set aside a jury verdict which, in the court's opinion, is against the law or the evidence. . . . [The trial court] should not set aside a verdict where it is apparent that there was some evidence upon which the jury might reasonably reach their conclusion, and should not refuse to set it aside where the manifest injustice of the verdict is so plain and palpable as clearly to denote that some mistake was made by the jury in the application of legal principles . . . . Ultimately, [t]he decision to set aside a verdict entails the exercise of a broad legal discretion . . . that, in the absence of clear abuse, we shall not disturb." (Internal quotation marks omitted.) *Edmands* v. *CUNO, Inc.*, 277 Conn. 425, 452–53, 892 A.2d 938 (2006).[10]

A

Evidence Relating to the Plaintiff's Prima Facie Case

We begin with the defendant's claim regarding the jury's findings that the plaintiff was physically disabled and that the defendant discriminated against him on the basis of his disabilities. Specifically, the defendant

---

[10] The defendant, in accordance with Practice Book § 16-37, moved for a directed verdict at the close of the plaintiff's case-in-chief, and at the close of the evidence. The trial court, however, reserved judgment on the defendant's motions, allowing the jury to consider the issues. The issue is, therefore, preserved for appellate review. See *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, 245 Conn. 1, 47–49, 717 A.2d 77 (1998).

contends that, pursuant to General Statutes § 46a-51 (15), the term " '[p]hysically disabled' refers to any individual who has any chronic physical handicap, infirmity or impairment, whether congenital or resulting from bodily injury, organic processes or changes or from illness, including, but not limited to, epilepsy, deafness or hearing impairment or reliance on a wheelchair or other remedial appliance or device," and the evidence proffered by the plaintiff was insufficient to satisfy this statutory definition. The defendant further contends that, even if the plaintiff were, in fact, disabled, the record contains insufficient evidence for the jury to have concluded that the defendant discriminated against him on that basis. We disagree with both of these claims.

The record contains ample support for the jury's findings that the plaintiff was physically disabled and that the defendant discriminated against him on the basis of physical disability. The plaintiff testified that, in either 1986 or 1987, he sustained an injury to his right knee in the course of his employment. The plaintiff further testified that, as a result of that injury, he underwent surgery, received workers' compensation benefits and was given a disability rating for his knee. The plaintiff also testified that he later suffered a "strained . . . lower lumbar spine." As a result of his injuries and accompanying surgery, the plaintiff experienced continuing discomfort. The defendant offered no evidence to refute the plaintiff's testimony regarding these injuries. Such evidence certainly satisfies the broad statutory definition of physical disability contained in § 46a-51 (15), which includes a "chronic . . . infirmity . . . resulting from bodily injury . . . ."

Similarly, the record also supports the jury's finding that the defendant took adverse employment action against the plaintiff on the basis of his disabilities. Specifically, the plaintiff introduced evidence that the

defendant had suspended his employment because of his physical disabilities, pending examination by a physician so that his duties could be reassessed, but that the defendant did not ever seek to have a physician examine him. The plaintiff further testified that his discharge was not precipitated by any type of warning or other indication that he was not adequately performing his job functions. Additionally, unlike other employees of the defendant, the plaintiff was not informed of the decision to privatize the defendant's functions and his corresponding right to seek employment with Professional because the defendant sent such notice to his work address, despite the fact that he had been explicitly instructed not to return there until after his disabilities had been evaluated by a medical professional. By the time the plaintiff received the letter, some two years later, it was too late for him to obtain employment with Professional.

Although the defendant contends that the plaintiff could not have been disabled because he was employed as a furniture mover during the pendency of the present lawsuit, "[i]t is not the function of this court to sit as the seventh juror when we review the sufficiency of the evidence . . . rather, we must determine, in the light most favorable to sustaining the verdict, whether the totality of the evidence, including reasonable inferences therefrom, supports the jury's verdict . . . . In making this determination, [t]he evidence must be given the *most favorable* construction in support of the verdict of which it is reasonably capable. . . . In other words, [i]f the jury could reasonably have reached its conclusion, the verdict must stand, even if this court disagrees with it." (Citations omitted; emphasis added; internal quotation marks omitted.) *Ormsby* v. *Frankel*, 255 Conn. 670, 692, 768 A.2d 441 (2001). Clearly, in the present case, there was evidence from which the jury could infer that the plaintiff was disabled and that, on

the basis of that disability, he suffered adverse employment action. Accordingly, we conclude that the trial court did not abuse its discretion by denying the defendant's motion to set aside the verdict.

### B

### Whether the Agreement Was Evidence of Pretext

The defendant also contends that there was insufficient evidence from which the jury could have concluded that the agreement was a pretext for unlawful discrimination against the plaintiff. The term "pretext" is most often used in the context of evaluating claims of discrimination based on adverse employment action under the burden shifting analysis enumerated by the United States Supreme Court in *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973),[11] and adopted by this court in *Ford* v. *Blue Cross & Blue Shield of Connecticut, Inc.*, 216 Conn. 40, 53–54, 578 A.2d 1054 (1990). "Under this analysis, the employee must first make a prima facie case of discrimination. The employer may then rebut the prima facie case by stating a legitimate, nondiscriminatory justification for the employment decision in question. The employee then must demonstrate that the reason proffered by the employer is merely a pretext and that the decision actually was motivated by illegal discriminatory bias." *Craine* v. *Trinity College*, 259 Conn. 625, 637, 791 A.2d 518 (2002).

"In order to establish a prima facie case, the complainant must prove that: (1) he [was] in the protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) that the

---

[11] We look to federal law for guidance in interpreting state employment discrimination law, and analyze claims under our act in the same manner as federal courts evaluate federal discrimination claims. See, e.g., *State* v. *Commission on Human Rights & Opportunities*, 211 Conn. 464, 469–70, 559 A.2d 1120 (1989).

adverse action occurred under circumstances giving rise to an inference of discrimination." (Internal quotation marks omitted.) *Jacobs* v. *General Electric Co.*, 275 Conn. 395, 400, 880 A.2d 151 (2005). We note, additionally, that "[t]he factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons will permit the trier of fact to infer the ultimate fact of intentional discrimination, and . . . upon such rejection, [n]o additional proof of discrimination is required . . . ." (Citation omitted; internal quotation marks omitted.) *St. Mary's Honor Center* v. *Hicks*, 509 U.S. 502, 511, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993).

The plaintiff failed, both in this court and in the trial court, to enumerate specifically the analytical framework for his assertion that the agreement was pretextual. On the basis of the trial court's framing of the issue, which precluded evidence of discrimination predating the agreement, the only adverse employment action at issue herein is the indefinite suspension in March, 1997.[12] The plaintiff has not challenged the trial

---

[12] We note that the *rehiring* of an employee cannot itself be deemed "adverse employment action." Failure to rehire, however, can satisfy this requirement. See, e.g., *National Railroad Passenger Corp.* v. *Morgan*, 536 U.S. 101, 114–15, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002) ("Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice." [Internal quotation marks omitted.]); *Boge* v. *Ringland-Johnson-Crowley Co.*, 976 F.2d 448, 451 (8th Cir. 1992) ("[A]n employer's failure to recall or rehire does not constitute a continuing violation of the [Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq.]. Each alleged discriminatory [act] constitutes a separate and completed act by the defendant."). In the present case, the fact that the defendant rehired the plaintiff upon his signing the agreement and indefinitely suspended him within a matter of weeks lends support to his contention that the defendant's stated reason for suspending him was pretextual.

court's decision to so limit the presentation of evidence. Accordingly, under the trial court's framework, along with the parties' evidence and pleadings, the plaintiff sought to prove that: (1) he was a member of a protected class, namely, the physically disabled; (2) he was qualified for employment at his desired position; (3) he suffered adverse employment action, namely, his indefinite suspension in 1997; and (4) the defendant had no intention of performing under the agreement and its enumerated reason for suspending the plaintiff, namely, his alleged inability to perform the functions of his job, was a pretext for unlawful discrimination.

We turn now to the merits of the defendant's claim that the trial court improperly declined to set aside the jury's finding that the defendant's stated reason for suspending the plaintiff was pretextual. Construing the evidence in a light most favorable to sustaining the verdict; *Ormsby* v. *Frankel*, supra, 255 Conn. 692; we conclude that the trial court properly denied the defendant's motion.

The plaintiff offered considerable testimony supporting his contention that the defendant had no intention of reinstating him. As stated previously, the plaintiff testified that in, December, 1993, he was terminated by the defendant, but that, pursuant to an arbitration award dated November 10, 1994, he was ordered reinstated. Despite the arbitrator's award, however, the defendant failed to return the plaintiff to work, requiring him to file a complaint with the commission. It was only after the plaintiff filed that complaint that the defendant "settled" its dispute with the plaintiff and returned him to work.[13] Furthermore, the plaintiff testified that,

---

[13] On the basis of the sparse record before us, there appears to be a significant issue regarding the enforceability of the agreement. Pursuant to the November 10, 1994 arbitration award, the defendant was legally obligated to return the plaintiff to work. Generally, " 'a promise to do something which the promisor is already legally obligated to do does not constitute consideration' " sufficient to support a valid contract. *Gianetti* v. *Norwalk Hospital*, 211 Conn. 51, 61, 557 A.2d 1249 (1989). The plaintiff failed to brief

although he was willing and able to perform all duties associated with his position following his reinstatement pursuant to the agreement, the defendant nevertheless suspended him less than two months after his reinstatement. Additionally, as stated previously, although the defendant purportedly suspended the plaintiff out of concern for his physical welfare, it at no time attempted to have a physician examine him.

On appeal, the defendant contends that, because the jury found that the defendant did not retaliate against the plaintiff for filing his complaint with the commission, it could not have found that the agreement was pretextual. This argument, which presumes that the plaintiff's discrimination and retaliation claims are identical, misapprehends the applicable law. As the First Circuit Court of Appeals has aptly stated: "The majority of cases are not cut from this seamless cloth. Even when retaliation is derivative of a particular act of harassment, it normally does not stem from the same animus. Most often, retaliation is a distinct and independent act of discrimination, motivated by a discrete intention to punish a person who has rocked the boat by complaining about an unlawful employment practice." *Noviello* v. *Boston*, 398 F.3d 76, 87 (1st Cir. 2005). In the present case, the jury reasonably could have found that, although the defendant did not rehire and discharge the plaintiff out of animus for his filing a complaint with the commission, the agreement was merely a mechanism by which to procure dismissal of the plaintiff's complaint, thus allowing the defendant to fire him on the basis of his disability for a new, trumped-up reason. Accordingly, because "there was some evidence upon which the jury might reasonably reach their conclusion"; (internal quotation marks omitted) *Edmands* v. *CUNO, Inc.*, supra, 277 Conn. 452–53; the trial court

---

or to argue this issue, however, before either this court or the trial court, and, accordingly, we decline to address it.

did not abuse its discretion by denying the defendant's motion for judgment notwithstanding the verdict on the jury's finding regarding the agreement.

## II

### THE TRIAL COURT'S RULING ON DAMAGES

We next address the plaintiff's claim that the trial court improperly concluded that the labor board, rather than the jury, should determine the amount of damages, including back pay, for the defendant's discriminatory conduct occurring prior to the date of the agreement. The plaintiff argues that the trial court's actions in referring the matter to the labor board for a determination of damages deprived him of his right to have the jury calculate damages on his discrimination claim. The plaintiff relies specifically on General Statutes § 31-51bb, which provides that persons employed pursuant to collective bargaining agreements shall not be denied the right to pursue statutory or constitutional claims where such claims exist.[14]

The plaintiff's reliance on § 31-51bb, which is not part of the act at issue herein, is misplaced. This court previously has stated that "the language of § 31-51bb and the legislative history indicate that [it was] intended to . . . eliminate the requirement that a plaintiff who is subject to a collective bargaining agreement exhaust all grievance and arbitration procedures before pursuing any statutory remedies in the trial court." (Citation omitted.) *Genovese* v. *Gallo Wine Merchants, Inc.*, 226 Conn. 475, 481, 628 A.2d 946 (1993). In other words,

---

[14] General Statutes § 31-51bb provides: "No employee shall be denied the right to pursue, in a court of competent jurisdiction, a cause of action arising under the state or federal Constitution or under a state statute solely because the employee is covered by a collective bargaining agreement. Nothing in this section shall be construed to give an employee the right to pursue a cause of action in a court of competent jurisdiction for breach of any provision of a collective bargaining agreement or other claims dependent upon the provisions of a collective bargaining agreement."

"[§] 31-51bb was enacted by the legislature to ensure that employees covered by a collective bargaining agreement receive the same opportunity to litigate their statutory claims as those employees who are not covered by a collective bargaining agreement." Id., 484. Accordingly, § 31-51bb does not create an independent right to a jury determination of damages when, as in the present case, it is unclear that *any* litigant possesses such a right under the act.

Resolution of the plaintiff's claim, therefore, hinges on the meaning of the remedy provision of the act, namely, General Statutes § 46a-104,[15] and requires a two step analysis, specifically whether: (1) the plaintiff *was entitled* to a jury determination of damages on his cause of action under the act; and (2) the trial court's remedy violated that right. Thus, we are left with a threshold question of whether the plaintiff, or indeed, any employee, whether subject to a collective bargaining agreement or not, has a right to a jury trial for state employment discrimination claims under the act. We note that this issue is unsettled,[16] and, in the proper context, might be ripe for this court's review. In the present case, however, the plaintiff has ignored the first

---

[15] General Statutes § 46a-104 provides: "The court may grant a complainant in an action brought in accordance with section 46a-100 such legal and equitable relief which it deems appropriate including, but not limited to, temporary or permanent injunctive relief, attorney's fees and court costs."

[16] The question of whether a litigant is entitled to a jury determination of damages under the act has not been the subject of an appellate level decision in this state. Although there is Superior Court precedent supporting the proposition that the right to trial by jury exists under the act; see *Thayer* v. *Electro-Methods, Inc.*, Superior Court, judicial district of Hartford at Hartford, Docket No. CV-04-0830647S (June 30, 2005) (right to jury trial in civil actions under act); *Stedman* v. *Konover Construction Corp.*, Superior Court, judicial district of Hartford-New Britain at New Britain, Docket No. CV-93-0457003S (December 6, 1994) (13 Conn. L. Rptr. 79) (same); § 46a-104 appears to leave the issue of remedy to the trial court's sound discretion. See footnote 15 of this opinion; see also *Trantolo* v. *State*, Superior Court, judicial district of Hartford at Hartford, Docket No. CV-97-0569475S (June 8, 1999) (25 Conn. L. Rptr. 19) (no right to jury trial under act in claim against state).

issue, focusing the entirety of his analysis on the issue of whether the trial court's actions violated his *presumed* right to a jury determination of damages.

It is axiomatic that, "[w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . We consistently have held that [a]nalysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [A]ssignments of error which are merely mentioned but not briefed beyond a statement of the claim will be deemed abandoned and will not be reviewed by this court. . . . Where the parties cite no law and provide no analysis of their claims, we do not review such claims." (Citation omitted; internal quotation marks omitted.) *Knapp* v. *Knapp*, 270 Conn. 815, 823–24 n.8, 856 A.2d 358 (2004).

In the present case, the plaintiff devotes eleven pages of his brief to arguing that the trial court abridged his right to a jury determination of damages for discrimination. His brief is devoid, however, of any analysis of whether that right even exists, a question that is far from settled. See footnote 16 of this opinion. Indeed, the plaintiff only alludes to the issue's existence on one occasion, stating: "The court infringed on the [p]laintiff's right to have the jury decide damages on its finding that the defendant discriminated against the [p]laintiff. (Right to jury trial on claims filed pursuant to [General Statutes § 46a-60. See *Stedman* v. *Konover Construction Corp.*, Superior Court, judicial district of Hartford-New Britain at New Britain, Docket No. CV-93-0457003S (December 6, 1994).])."

This failure to brief a crucial underlying premise precludes further review of this claim, which we deem abandoned. See *Bridgeport Hospital* v. *Commission on Human Rights & Opportunities*, 232 Conn. 91, 115–16, 653 A.2d 782 (1995) ("[The plaintiff's] argument . . .

presupposes the application of [the statute at issue] to employment cases. If [the statute at issue] does not apply to employment cases, then we are not even presented with [a constitutional question]. . . . Nevertheless, [the plaintiff] has not bothered to brief this underlying premise. Where an issue is merely mentioned, but not briefed beyond a bare assertion of the claim, it is deemed to have been waived. . . . In this case, [the plaintiff's] argument derives from a premise, the validity of which has not been tested. Without the benefit of adequate briefing, we will not decide whether [the statute at issue] has the sweep that [the plaintiff] ascribes to it." [Citations omitted; internal quotation marks omitted.]). Our conclusion in *Bridgeport Hospital* is particularly instructive in the present case, wherein the issue of whether a plaintiff is entitled to a jury determination of damages is hardly settled in the plaintiff's favor. Rather than address this issue without the benefit of adequate briefing and argument, we leave its resolution for another day.

## III

### THE TRIAL COURT'S RULING REGARDING "BUMPING RIGHTS"

The plaintiff also claims that the trial court improperly precluded him from arguing the value of his "bumping rights" to the jury. The following additional facts and procedural history are relevant to this claim. At the close of the evidence, the plaintiff stated that he planned to request that the jury award him damages for loss of his "bumping rights." Specifically, the plaintiff indicated that he planned to draw the jury's attention to a provision of the collective bargaining agreement between the plaintiff and the city. The defendant objected to the plaintiff's mention of bumping rights in closing argument, arguing that he had made no mention of bumping rights in his complaint, and only scant evi-

dence of their existence had been presented at trial. The defendant, therefore, argued that any valuation of the plaintiff's "bumping rights" would be speculative. The trial court agreed, and precluded the plaintiff from mentioning them.[17]

We begin our analysis with the appropriate standard of review. "In general, the scope of final argument lies within the sound discretion of the court . . . subject to appropriate constitutional limitations. . . . It is within the discretion of the trial court to limit the scope of final argument to prevent comment on facts that are not properly in evidence, to prevent the jury from considering matters in the realm of speculation and to prevent the jury from being influenced by improper matter that might prejudice its deliberations." (Citations omitted; internal quotation marks omitted.) *State* v. *Arline*, 223 Conn. 52, 59, 612 A.2d 755 (1992). "When reviewing claims under an abuse of discretion standard, the unquestioned rule is that great weight is due to the action of the trial court and every reasonable presumption should be given in favor of its correctness . . . . In determining whether there has been an abuse of discretion, the ultimate issue is whether the court could reasonably conclude as it did." (Citation omitted; internal quotation marks omitted.) *PSE Consulting, Inc.* v. *Frank Mercede & Sons, Inc.*, 267 Conn. 279, 328–29, 838 A.2d 135 (2004).

In the present case, "bumping rights" were mentioned only three times at trial. The plaintiff, in response to a question from his counsel regarding his knowledge of the layoff of the defendant's employees and their hiring by Professional, stated: "Somewhere around in there I was supposed to—I had—I could have exercised bump-

---

[17] The trial court also concluded that "bumping rights" fell "outside the parameters of the complaint," and concluded that the mention of "bumping rights" would unduly prejudice the defendant.

ing rights or I was supposed to apply for work with [Professional] or to that affect." The plaintiff did not elaborate at that time. Later, during cross-examination, the plaintiff explained that, following his suspension from work in March, 1997, he did not exercise "bumping rights" because he had not been formally terminated, but merely suspended pending evaluation by a physician. Finally, counsel for the defendant inquired of Katherine Foley, an agent with the labor board, whether the plaintiff had attempted to exercise bumping rights, to which she replied that the plaintiff had indicated that he was informed that he did not possess any such rights, and the plaintiff cross-examined Foley briefly on the matter. Furthermore, the specific term "bumping rights" was not defined by any of the previously mentioned witnesses, although it was explained in an exhibit admitted at trial.[18] As the trial court noted, however, there was *no testimony whatsoever* regarding whether the plaintiff would have been eligible to bump any employee or group of employees. In the absence of testimony that employees of less seniority than the plaintiff were retained following the layoff, there was no basis to determine the value or existence of any "bumping rights." Clearly, therefore, the trial court in the present case did not abuse its discretion in concluding that any damages based upon lost "bumping rights" would be speculative, and in precluding the plaintiff's counsel from mentioning them in his closing argument.

The judgment is affirmed.

In this opinion the other justices concurred.

---

[18] The plaintiff submitted as an exhibit the collective bargaining agreement between the city and the plaintiff's labor union, which provided in relevant part: "An employee subject to be laid off shall have the right to bump to an equal or a lower classification in the [c]ivil [s]ervice code group provided she/he has the ability to do the work required without further training and has greater seniority than the least senior employee in the equal or lower classification."