## LEANNA SIMMONS *v.* MICHAEL WELCH ET AL.

Superior Court, Judicial District of Hartford
File No. CV-02 0813699

Memorandum filed July 22, 2003

*Brian W. Prucker*, for the plaintiff.

*Nancy S. Rosenbaum Law Offices*, for the named defendant.

*Brian Flint* and *Tina M. Flint*, pro se, defendants.

SHELDON, J. In this case, the plaintiff, Leanna Simmons, has sued the defendant, Michael Welch, her former landlord at 5 Westford Avenue in Stafford, Connecticut, and defendants Brian Flint and Tina M. Flint, two of her former cotenants at that address, to recover money damages for injuries she claims to have suffered when, on January 22, 2000, while walking her own dog in front of the building at 5 Westford Avenue, she was attacked and bitten by the Flints' pit bull, which they kept on the premises with Welch's permission. In her five count complaint dated January 10, 2002, the plaintiff claims that the attack occurred at or about 11:30 a.m. on the day in question when, suddenly and without warning, the pit bull came out of the building, immediately attacked her dog, and then turned on her. As a result of the attack, the plaintiff claims that she sustained a laceration along the ulnar aspect of the pulp of her index finger and an open fracture of her distal phalanx, requiring sutures and surgery.

The plaintiff has brought three claims against Welch in connection with this incident: one each sounding in negligence (Count I), breach of contract (Count II) and strict liability under the Connecticut Dog Bite Statute, General Statutes § 22-357 (Count III). She has also brought one claim each against Brian Flint and Tina M. Flint, both sounding in strict liability under § 22-357. Welch has answered all three claims against him by

denying or leaving the plaintiff to her proof as to their essential allegations. In addition, he has interposed the following special defenses, which the plaintiff has denied: comparative negligence (as to the plaintiff's claim of negligence); lack of a written contract or lease between himself and the plaintiff (as to the plaintiff's claim of breach of contract); and inapplicability of § 22-357 to nonowners and nonkeepers of dogs (to the plaintiff's claim of strict liability under § 22-357). The Flints, however, have never responded to the plaintiff's claims against them. Accordingly, they have been defaulted for failure to plead.

The case is now before this court on Welch's motion for summary judgment dated May 16, 2003. In his motion, the defendant claims that he is entitled to judgment as a matter of law on the third count of the plaintiff's complaint because there is no genuine issue of material fact that he was not a "keeper" of the dog that allegedly attacked the plaintiff and caused her complained of injuries. The defendant has supported his motion with an accompanying memorandum of law dated May 11, 2003, and certified excerpts from the deposition transcripts of the plaintiff and himself. The plaintiff has opposed the motion with an objection and memorandum of law dated June 18, 2003, together with the following attached exhibits: her own sworn affidavit dated June 18, 2003; a photocopy of the residential lease for apartment 1L at 5 Westford Avenue, signed by Welch as "landlord" and her friend, Patricia Hewitt, a "tenant," on December 1, 1999, wherein the plaintiff is listed as a "temporary occupant"; and additional certified excerpts from the transcript of her deposition and that of Welch. Finally, the plaintiff filed a supplemental brief dated June 23, 2003, along with other certified excerpts from the deposition transcripts of herself and Welch.

# I

"Summary judgment is a method of resolving litigation when pleadings, affidavits, and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Wilson* v. *New Haven*, 213 Conn. 277, 279, 567 A.2d 829 (1989). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Internal quotation marks omitted.) *Connecticut Bank & Trust Co.* v. *Carriage Lane Associates*, 219 Conn. 772, 781, 595 A.2d 334 (1991). "Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment]." (Citations omitted; internal quotation marks omitted.) *Home Ins. Co.* v. *Aetna Life & Casualty Co.*, 235 Conn. 185, 202, 663 A.2d 1001 (1995), quoting *Water & Way Properties* v. *Colt's Mfg. Co.*, 230 Conn. 660, 664–65, 646 A.2d 143 (1994). "[T]he trial court may consider, in addition to the pleadings, affidavits and any other proof submitted by the parties." (Internal quotation marks omitted.) *Pepe* v. *New Britain*, 203 Conn. 281, 285–86, 524 A.2d 629 (1987). "[T]he parties are entitled to consideration, not only of the facts presented by their affidavits, but of the inferences which could be reasonably and logically drawn from them as well." (Internal quotation marks omitted.) *De*

*Dominicis* v. *American National Fire Ins. Co.*, 2 Conn. App. 686, 687, 483 A.2d 616 (1984).

## II

At all times relevant to this case, § 22-357 has provided in relevant part as follows: "If any dog does any damage to . . . the body . . . of any person, the owner or keeper, or, if the owner or keeper is a minor, the parent or guardian of such minor, shall be liable for such damage, except when such damage has been occasioned to the body . . . of a person who, at the time such damage was sustained, was committing a trespass or other tort, or was teasing, tormenting or abusing such dog." General Statutes § 22-357. To prevail on a claim of strict liability under this statute, the plaintiff must plead and prove, inter alia, that at the time the plaintiff suffered her complained of injuries, the defendant, if he or she was not a minor, was an "owner or keeper" of the dog that caused such injuries.

In this case, the plaintiff has claimed, in the third count of her complaint, that defendant Welch is strictly liable for all the injuries she suffered in the January 22, 2000 attack because he was then a "keeper" of the Flints' pit bull, within the meaning of § 22-357. In light of that allegation, the defendant is entitled to prevail on his motion for summary judgment if he can demonstrate, based on all the evidence presented on the motion and all reasonable inferences that may logically be drawn therefrom, that there is no genuine issue of material fact that he was not in fact a "keeper" of the pit bull on the day it attacked and injured the plaintiff.

The term "keeper" is statutorily defined as follows for the purposes of § 22-357: " 'Keeper' means any person, other than the owner, harboring or having in his possession any dog . . . ." General Statutes § 22-327 (6). To apply this definition, its own essential elements must first be identified and defined.

The term "owner," as used in this definition and in the text of § 22-357, has no statutory definition of its own or other special or technical meaning. Instead, it simply means the person to whom the dog belongs, in the sense that he has title to it and may lawfully have and hold it as his own personal property. *McAdams* v. *Starr*, 74 Conn. 85, 86–87, 49 A. 897 (1901). Here, Welch can qualify as a "keeper" of the Flints' dog if he "harbored" or "possessed" it because the plaintiff has pleaded, and the record clearly shows, that the Flints, not he, were the "owners" of the dog.

A person "harbors" a dog, for the purposes of § 22-327 (6), when he "afford[s] lodging to [it], shelter[s it, or] give[s] refuge to [it]." *Buturla* v. *St. Onge*, 9 Conn. App. 495, 497, 519 A.2d 1235, cert. denied, 203 Conn. 803, 522 A.2d 293 (1987), citing *Hancock* v. *Finch*, 126 Conn. 121, 122, 9 A.2d 811 (1939). A "harborer" has been defined as "one who treats a dog as living in his home and undertakes to *control* the dog's actions." (Emphasis in original.) *Buturla* v. *St. Onge*, supra, 497. In a similar vein, a person is deemed to have a dog in his "possession" when he exercises "dominion and control" over it. *Hancock* v. *Finch*, supra, 123; *Buturla* v. *St. Onge*, supra, 498.

In light of the foregoing definitions, the Appellate Court in *Buturla* held that for the purposes of §§ 22-327 (6) and 22-357, a "keeper" of a dog is one who exercises at least "some degree of control" over the dog. *Buturla* v. *St. Onge*, supra, 9 Conn. App. 498. Applying that test to the facts before it, the *Buturla* court upheld the trial court's granting of summary judgment to two defendant landlords against whom strict liability claims had been made under § 22-357 because a dog they had permitted a tenant to keep in his apartment bit the plaintiff while he was visiting the tenant's apartment.

In reaching this result, the *Buturla* court summarized the claim and the evidence as follows: "The plaintiff contends that [Marion Zura and John Zura], as landlords who consented to the dog's presence in the apartment, were liable under General Statutes § 22-357 [as 'keepers'] of a dog. The Zuras' uncontradicted affidavits stated that neither of them had ever fed or taken care of the dog, nor had the dog ever been allowed to roam in or use the yard abutting the building. The affidavits stated further that the only common area used by the dog was the staircase leading from the apartment to the street. That staircase was used only as access to and from the street. The record contains no counteraffidavits." *Buturla* v. *St. Onge*, supra, 9 Conn. App. 496. Comparing this evidence to that presented in two other cases, *Bailey* v. *DeSanti*, 36 Conn. Sup. 156, 414 A.2d 1187 (1980), and *Larsen* v. *MacDonald*, 5 Conn. Sup. 150 (1937), where nonowner defendants were held to have been "keepers" of others' dogs, the *Buturla* court concluded as follows that the defendant landlords before it were not keepers of their tenant's dog: "We find, as did the trial court, that in order to harbor or possess a dog, some degree of control over the dog must be exercised. The two cases cited by the trial court followed the same analysis. In *Bailey* v. *DeSanti*, [supra, 156] the court found that the defendant landlord had harbored the dog involved because the dog was kept in an area of the yard under the direct control of the landlord. Similarly, in *Larsen* v. *MacDonald*, [supra, 150] the court used a 'control of the dog' standard to find that the defendant employer was keeper of his employee's dog. In conclusion, neither the definition of harborer nor the definition of possession [permits] the conclusion that the Zuras were keepers of the dog. Consequently, there are no genuine issues of material fact, and we find that the court was correct in granting the motion for summary judgment." *Buturla* v. *St. Onge*, supra, 498.

Several important conclusions can be drawn from *Buturla* as to what does and does not constitute the exercise of "some control" by a landlord over a tenant's dog. First, a landlord's mere granting of permission to a tenant to keep a dog in his apartment does not constitute the exercise of such control over the dog as to make the landlord its "keeper." Though a landlord obviously controls the tenant's right to keep a dog in his apartment by either granting or denying him permission to do so, the tenant has the exclusive right, during the term of his leasehold, to possess and control his apartment and all personal property in it, including his dog.

Second, a dog's mere use of common stairways and hallways in the apartment building to enter and exit the building and gain access to or leave its tenant-owner's apartment does not make the landlord its keeper even though such common areas are generally controlled by the landlord. Were it otherwise, a finding of control would surely have been made in *Buturla*, where the defendants admitted in their affidavits that their tenant's dog made such limited, and obviously necessary, use of common areas.

Third, however, when a tenant's dog makes greater use of common areas in and about leased premises than that of the dog at issue in *Buturla*, either because it is generally kept in such areas or because it is allowed to roam through them without immediate control by the tenant, an inference is raised that the landlord exercises at least "some degree of control" over the dog, and thus that he is its "keeper." This, of course, is why the *Buturla* court specially noted that the dog in the case before it had not been allowed to roam in or use the yard abutting the building. Had contrary evidence been presented, there would impliedly have been a genuine issue of material fact as to the landlords' control over the dog, and thus as to their alleged status as its "keepers."

Fourth, and finally, a landlord exercises sufficient control over a tenant's dog to become its "keeper" when he assumes direct control over the dog for any purpose such as feeding it, caring for it or sheltering it. This is the basis upon which the *Buturla* court distinguished *Bailey* from the case before it. In *Bailey*, to reiterate, the defendant landlord had kept his tenant's dog in a common area of the backyard of the apartment building that was under his direct control. In *Buturla*, by contrast, the defendants averred that the dog had no such access to common areas. In *Buturla*, moreover, the landlords averred without contradiction that they had never fed or taken care of their tenant's dog. Had there been evidence to the contrary, the court implied, genuine issues of material fact would have been raised as to the landlord's exercise of control over the dog, and whether, on that basis, he had become its keeper.

## III

In this case, Welch bases his claim that he was not the keeper of his tenants' pit bull on his own sworn statements, made in the course of his deposition, that the dog was an "outside dog" which stayed primarily in the backyard of the building on a chain. According to Welch, he had a conversation with the dog's owner, Brian Flint, about keeping the dog on a leash when the Flints first brought the dog on the property, and he never received complaints from the neighbors about the dog. This testimony, he notes, is confirmed by a conversation he had with the plaintiff about keeping her dog on a leash, and by the plaintiff's testimony that she once took the Flints' dog inside and put him in their apartment because it was too cold for him to remain outside. From this testimony, Welch would apparently have the court conclude that whenever the dog was in common areas of the building, it was either chained or

on a leash, and thus that he, who only visited the premises once each week, never took control of the dog for any purpose, and so did not become its keeper.

In opposition to this claim, the plaintiff notes, and the court agrees, that Welch's argument is undermined by some of the very facts upon which he relies most heavily, to wit: that the dog here in question was usually chained up outside in the backyard of the building at 5 Westford Avenue. The parties have referred to the backyard of the premises as a common area, and no evidence has been introduced to suggest otherwise. Hence, Welch, by his own testimony, has conceded that he permitted the Flints to keep their dog in, and the dog to make general use of, a common area over which he, as landlord, retained complete control and responsibility whenever the Flints were not immediately present to supervise and control the dog themselves. This, in fact, is exactly the kind of use of a common area of the premises, not used merely for entering and exiting the building or an apartment therein, that made the landlord liable for his tenant's dog in *Bailey*. It is also the kind of use which the defendant landlords denied in *Buturla*, thereby persuading the court that they had not exercised such control over their tenant's dog as to make them its keepers under § 22-357.

Here, moreover, Welch's problem is compounded by undisputed evidence that the Flints' prior efforts to secure their dog behind the building had not always been successful, for at least on one occasion, the dog had broken loose and run away to a farm, where it had been kicked in the head by a horse. Whether or not this gave evidence of the dog's dangerous propensities, it surely gave notice of the inadequacy of his restraints, and thus of his continuing access to common areas of the premises if he were not chained more securely. Under *Buturla*, such regular use of or access to com-

mon areas of the building controlled by the landlord supports an inference of control by the landlord, and thus that the landlord was a keeper of the dog within the meaning of § 22-357.

## CONCLUSION

For all of the foregoing reasons, the court hereby finds that there is a genuine issue of material fact as to Welch's control over the Flints' pit bull, and thus as to his alleged status as its keeper when it attacked and bit the plaintiff. Accordingly, Welch's motion for summary judgment is hereby denied.