# VIRGINIA AUSTER *v.* NORWALK UNITED METHODIST CHURCH ET AL.
## (SC 17672)

Rogers, C. J., and Norcott, Palmer, Vertefeuille and Schaller, Js.

Argued October 26, 2007—officially released March 25, 2008

*Robert F. Maslan, Jr.*, with whom, on the brief, was *Amy J. Boland*, for the appellant (plaintiff).

*Robert C. E. Laney*, with whom were *Sarah F. DePanfilis* and, on the brief, *Charles A. Deluca*, for the appellee (named defendant).

*Opinion*

PALMER, J. The plaintiff, Virginia Auster, suffered injuries when she was bitten by a dog owned by an employee of the named defendant, Norwalk United Methodist Church.[1] The plaintiff commenced this action against the defendant seeking damages under the dog bite statute, General Statutes § 22-357,[2] pursuant to

---

[1] We note that the plaintiff also named Pedro Salinas as a defendant but subsequently withdrew the action as against him, leaving Norwalk United Methodist Church as the only remaining defendant. In the interest of simplicity, we refer to Norwalk United Methodist Church as the defendant throughout this opinion.

[2] General Statutes § 22-357 provides: "If any dog does any damage to either the body or property of any person, the owner or keeper, or, if the owner or keeper is a minor, the parent or guardian of such minor, shall be liable for such damage, except when such damage has been occasioned to the body or property of a person who, at the time such damage was sustained, was committing a trespass or other tort, or was teasing, tormenting or abusing such dog. If a minor, on whose behalf an action under this section is brought, was under seven years of age at the time the damage was done, it shall be presumed that such minor was not committing a trespass or other tort, or teasing, tormenting or abusing such dog, and the burden of proof thereof shall be upon the defendant in such action."

which an owner or "keeper" of a dog is strictly liable for any damage caused by the dog to the person or property of another. Specifically, the plaintiff sought to recover damages from the defendant as a "keeper" of the dog under § 22-357. Following a jury trial, the jury returned a verdict for the plaintiff, and the trial court rendered judgment in accordance therewith. The defendant appealed to the Appellate Court, which reversed the judgment of the trial court, concluding, inter alia, that the evidence was insufficient to support a finding that the defendant qualified as a "keeper" of the dog for purposes of § 22-357. *Auster* v. *Norwalk United Methodist Church*, 94 Conn. App. 617, 621, 624, 894 A.2d 329 (2006). We granted the plaintiff's petition for certification to appeal; *Auster* v. *Norwalk United Methodist Church*, 278 Conn. 915, 899 A.2d 620 (2006); and now affirm the judgment of the Appellate Court.

The opinion of the Appellate Court sets forth the following facts that the jury reasonably could have found. "The defendant is located on West Avenue in Norwalk and consists of a church building, a parish house and an education building. Pedro Salinas was an employee of the defendant and lived in an apartment in the parish house with his family.[3] Salinas was the owner of the [mixed breed pit bull] dog that attacked the plaintiff. [After an incident several years earlier in which the dog bit one of the defendant's employees, the defendant instructed Salinas that the dog must be kept inside Salinas' apartment between the hours of 6 a.m. and 7 p.m. and, at all other times, chained to the railing of a stairwell leading up to the apartment. At

---

The term " '[k]eeper' means "any person, other than the owner, harboring or having in his possession any dog . . . ." General Statutes § 22-327 (6).

[3] Salinas held the position of church sexton. "[A]s part of [his] compensation, he and his wife and four children were provided housing in an apartment in the rear of the parish house. He did not have a written lease with the defendant." *Auster* v. *Norwalk United Methodist Church*, supra, 94 Conn. App. 619 n.3.

no time was the dog permitted to roam freely on the defendant's property.] On July 27, 2000, the plaintiff arrived at the premises to attend a meeting scheduled for 7:30 p.m. in the parish house. The plaintiff was early for the meeting, and when she arrived, the front door of the parish house was locked. The plaintiff walked around to the side of the parish house to find someone to unlock the door. She went to the side stairway that led up to Salinas' living quarters. There was a landing on the top of the stairway that led to an indoor porch that connected to Salinas' kitchen. When the plaintiff reached the top of the stairway, she raised her voice to see if anyone was home at Salinas' residence. At that time, the dog appeared at the porch doorway. The bottom panel of the porch door was either broken or missing. While the plaintiff was at the doorway, the dog ran through the opening and bit the plaintiff on her leg."[4] *Ausler* v. *Norwalk United Methodist Church*, supra, 94 Conn. App. 619. The defendant subsequently directed Salinas to remove the dog from the premises.

The plaintiff brought this action to recover damages from the defendant as "keeper" of the dog under § 22-357. The plaintiff's complaint also contained a claim of common-law negligence. The trial court instructed the jury that if it returned a verdict for the plaintiff on her claim under § 22-357, it did not need to return a verdict on the negligence claim. The jury returned a verdict in favor of the plaintiff on her statutory strict liability claim and awarded her damages totaling $142,832.37. Accordingly, the jury did not render a verdict on the plaintiff's negligence claim.

The defendant filed a motion to set aside the verdict, claiming, first, that the evidence was insufficient to

[4] The dog bit the plaintiff on her left calf. Her wound required hospitalization and skin harvesting from her left thigh to repair the damaged tissue. As a result of her injuries, the plaintiff has permanent scars on her left upper and lower leg.

support a finding that it was a "keeper" of Salinas' dog within the meaning of General Statutes §§ 22-327 (6) and 22-357 and, second, that the trial court improperly had permitted the plaintiff to present evidence of the defendant's liability insurance coverage for the purpose of establishing the defendant's control of the premises.[5] The trial court denied the defendant's motion and rendered judgment in accordance with the jury verdict. On appeal to the Appellate Court, the defendant raised the same claims that it had raised in its motion to set aside the verdict. See id., 618–19. The Appellate Court agreed with both of the defendant's claims and reversed the judgment of the trial court.[6] Id., 621, 623.

In concluding that the trial court improperly had determined that the evidence was sufficient to support a finding that the defendant qualified as a "keeper" of Salinas' dog, the Appellate Court first observed that, under § 22-327 (6),[7] the term "keeper" is defined as "any person, other than the owner, harboring or having in his possession any dog." Id., 620–21. The court then explained that "[t]o harbor a dog is to afford lodging, shelter or refuge to it"; (internal quotation marks omitted) id., 621; that possession of a dog requires the exercise of dominion and control over the dog; id.; and that, "[i]n order to harbor or possess a dog, some degree of control over the dog must be exercised." (Internal quotation marks omitted.) Id.

Applying these definitional principles, the Appellate Court rejected the plaintiff's contention that, because

---

[5] The defendant also had raised a timely objection to the admissibility of the evidence of its liability insurance coverage. The trial court, however, overruled the defendant's objection.

[6] As we have explained, the jury did not return a verdict on the plaintiff's common-law negligence claim. Thus, upon reversing the trial court's judgment on the plaintiff's statutory claim, the Appellate Court remanded the case for a new trial on the plaintiff's negligence claim. See *Auster* v. *Norwalk United Methodist Church*, supra, 94 Conn. App. 624.

[7] See footnote 2 of this opinion.

the defendant owned the premises where the dog lived and placed some restrictions on the dog's movements, the jury reasonably could have concluded that the defendant was the keeper of the dog for purposes of strict liability under § 22-357. Id. Although there was no written lease agreement between Salinas and the defendant, the Appellate Court likened the relationship between them to that of landlord and tenant, and observed that, according to its decision in *Stokes* v. *Lyddy*, 75 Conn. App. 252, 267, 815 A.2d 263 (2003), "a landlord . . . is not a keeper of a dog merely because a tenant owns a dog and keeps the dog on the premises. To determine who is a keeper of a dog, the analysis relies on the degree of control exerted over the dog." (Internal quotation marks omitted.) *Auster* v. *Norwalk United Methodist Church*, supra, 94 Conn. App. 621 n.6. The Appellate Court concluded that the defendant was not a keeper of the dog because it did not exercise sufficient control over the dog. Id., 621–22. The court reasoned: "Salinas was solely responsible for the care of his dog. The defendant did not feed, [provide] water [to] or house the dog. The dog resided only in Salinas' living quarters, either in the apartment, on the porch or chained to the steps leading to the apartment, and did not roam freely around the defendant's property." Id., 621. The court further explained that, in contrast to the plaintiff in *Murphy* v. *Buonato*, 42 Conn. App. 239, 244, 679 A.2d 411 (1996), aff'd, 241 Conn. 319, 696 A.2d 320 (1997), who had "qualified as a 'keeper' " because he "had assumed sole responsibility to feed, water, walk and provide shelter for a dog in his home on a temporary basis"; *Auster* v. *Norwalk United Methodist Church*, supra, 622; the defendant in the present case "did nothing remotely close to those activities . . . ." Id. The Appellate Court concluded that "[t]he defendant did not exercise dominion and control over the dog in any manner other than by placing a limit on

when and where Salinas could let his dog outside. This minimal regulation [was] insufficient to establish that the defendant" was a keeper of the dog for purposes of § 22-357. Id.

The Appellate Court also agreed with the defendant that the trial court had abused its discretion in permitting the plaintiff to present evidence of the defendant's liability insurance coverage. Id., 623–24. The court explained that, under § 4-10 of the Connecticut Code of Evidence,[8] evidence that a person was or was not insured against liability generally is inadmissible to prove whether the person acted negligently or otherwise wrongfully but that such evidence is admissible when it is offered for another purpose, such as proof of ownership or control. Id., 623. The Appellate Court rejected the plaintiff's contention that evidence of the defendant's liability insurance coverage was admissible on the issue of ownership or control, first, because it was undisputed that the defendant was the owner of the premises, and, second, evidence that the defendant owned the property had little or no bearing on the issue of whether the defendant had control over Salinas' dog under § 22-357. The court concluded, therefore, that the evidence was both irrelevant and prejudicial.[9] Id., 624.

[8] Section 4-10 of the Connecticut Code of Evidence provides: "(a) General rule. Evidence that a person was or was not insured against liability is inadmissible upon the issue of whether the person acted negligently or otherwise wrongfully.

"(b) Exception. This section does not require the exclusion of evidence of insurance against liability when offered for another purpose, such as proof of agency, ownership, or control, or bias or prejudice of a witness."

[9] Judge Berdon dissented from the majority opinion of the Appellate Court. He maintained that, because "the living quarters of Salinas were not rented to him but were part of the defendant's premises"; *Auster* v. *Norwalk United Methodist Church*, supra, 94 Conn. App. 625 (*Berdon, J.*, dissenting); it was "obvious that the defendant afforded shelter to Salinas and the pit bull." Id. With respect to the element of control, Judge Berdon reasoned that "control clearly was demonstrated by the defendant when Salinas was instructed that the pit bull was allowed out of the apartment under certain conditions and ultimately when Salinas was directed to remove the dog from the property of the defendant after the dog bit the plaintiff . . . ." Id.

We granted the plaintiff's petition for certification to appeal limited to the following issues: First, "[d]id the Appellate Court properly conclude that there was [in]sufficient evidence to support the jury's conclusion that the defendant was a keeper of the dog?" *Auster* v. *Norwalk United Methodist Church*, supra, 278 Conn. 915. Second, "[d]id the Appellate Court correctly conclude that the trial court's admission of evidence of insurance was prejudicial?" Id. We answer both of the certified questions in the affirmative.

## I

Before addressing the merits of the two issues raised by this appeal, we set forth the principles applicable to our analysis of the plaintiff's claims. "The standard of review governing our review of a trial court's denial of a motion to set aside the verdict is well settled. The trial court possesses inherent power to set aside a jury verdict [that], in the court's opinion, is against the law or the evidence. . . . [The trial court] should not set aside a verdict [when] it is apparent that there was some evidence [on] which the jury might reasonably reach [its] conclusion, and should not refuse to set it aside [when] the manifest injustice of the verdict is so plain and palpable as clearly to denote that some mistake was made by the jury in the application of legal principles . . . . Ultimately, [t]he decision to set aside a verdict entails the exercise of a broad legal discretion . . . that, in the absence of clear abuse, we shall not disturb." (Internal quotation marks omitted.) *Jackson* v. *Water Pollution Control Authority*, 278 Conn. 692, 702, 900 A.2d 498 (2006).

---

Judge Berdon therefore concluded that, "[a]s a matter of law, it [was] clear . . . that the defendant was a harborer of the . . . dog." Id., 625–26 (*Berdon, J.*, dissenting). Finally, Judge Berdon also concluded that the evidence of the defendant's insurance was admissible to show control of the offending dog. Id., 626 (*Berdon, J.*, dissenting).

We turn first to the plaintiff's contention that, contrary to the conclusion of the Appellate Court, the evidence was sufficient to support the jury's finding that the defendant was a keeper of Salinas' dog within the meaning of § 22-357.[10] Under General Statutes § 22-327 (6), a keeper is defined as "any person, other than the owner, harboring or having in his possession any dog . . . ." "To harbor a dog is to afford lodging, shelter or refuge to it." *Falby* v. *Zarembski*, 221 Conn. 14, 19, 602 A.2d 1 (1992). "[P]ossession [of a dog] cannot be fairly construed as anything short of the exercise of dominion and control similar to and in substitution for that which ordinarily would be exerted by the owner in possession." *Hancock* v. *Finch*, 126 Conn. 121, 123, 9 A.2d 811 (1939). "One who treats a dog as living at his house and undertakes to control his actions is [a] . . . keeper . . . ." *McCarthy* v. *Daunis*, 117 Conn. 307, 309, 167 A. 918 (1933); see also *Buturla* v. *St. Onge*, 9 Conn. App. 495, 497–98, 519 A.2d 1235, cert. denied, 203 Conn. 803, 522 A.2d 293 (1987).

In *Falby* v. *Zarembski*, supra, 221 Conn. 14, we applied the foregoing principles in concluding that the evidence was insufficient to support a finding that the employer of an employee who brought his dog to work was a keeper of the dog. In reaching our conclusion,

---

[10] We note that "§ 22-357, which has been a law in Connecticut since 1798, flows directly from Connecticut common law. . . . The principal purpose and effect [of the statute] was to abrogate the common-law doctrine of scienter as applied to damage by dogs to persons and property, so that liability of the owner or keeper became no longer dependent [on] his knowledge of the dog's ferocity or mischievous propensity; literally construed, the statute would impose an obligation on him to pay for any and all damage the dog may do of its own volition. It extends the liability of the owner of a dog beyond that existing at common law . . . ." (Citation omitted; internal quotation marks omitted.) *Stokes* v. *Lyddy*, supra, 75 Conn. App. 266. Section 22-357 "is an example of the common law principle that, as between two innocent persons, namely the injured third party and the owner or keeper, the loss should fall on the one who caused it, rather than on the one who had no part in doing so." (Internal quotation marks omitted.) Id., 266–67.

we stated: "Viewed in the light most favorable to sustaining the jury's verdict . . . the evidence presented at trial established that [the employer] . . . had knowledge that [its employee] was in the habit of bringing the pit bull terrier with him to various work sites, that it acquiesced in the presence of the dog at these sites and that it could have prohibited [the employee] from bringing the dog with him to work if it had so desired. Although such facts may implicate [the employer] in some way in the attack of the dog on [the plaintiff], they do not indicate that [the employer] harbored or had possession of the dog and thus do not justify the imposition of strict liability under § 22-357. There was no evidence that [the employer] fed, [gave water to], housed or otherwise cared for the dog. There was no evidence that it exercised any form of control over the actions of the dog. . . . [C]ontrol over the premises where the dog inflicted the injuries or over [the employee], by virtue of the employment relationship, did not convert [the employer] into a keeper of [the employee's] dog while it was present at the work site." (Citation omitted.) Id., 19–20.

We agree with the Appellate Court that the plaintiff's claim is foreclosed by prior precedent of this court and the Appellate Court construing the term "keeper" set forth in § 22-327 (6). As the Appellate Court indicated, a person will not be deemed to be a keeper of a dog under § 22-357 unless that person exercises control over the dog "in a manner similar to that which would ordinarily be exerted by the owner." *Auster* v. *Norwalk United Methodist Church*, supra, 94 Conn. App. 622; accord *Hancock* v. *Finch*, supra, 126 Conn. 123; cf. *Buturla* v. *St. Onge*, supra, 9 Conn. App. 497 (citing authorities defining "harborer" as "one who treats a dog as living in his home and undertakes to control the dog's actions"). In other words, a nonowner of a dog cannot be held strictly liable for damage done by the

dog to another in the absence of evidence that the nonowner was responsible for maintaining and controlling the dog at the time the damage was done. As we indicated in *Falby*, such proof generally will consist of evidence that the nonowner was feeding, giving water to, exercising, sheltering or otherwise caring for the dog when the incident occurred. See *Falby* v. *Zarembski*, supra, 221 Conn. 19. Thus, a landlord is not the keeper of a dog for purposes of § 22-357 merely because the landlord acquiesces in the presence of the dog on leased premises, or because the landlord has the authority to require that the dog be removed from the premises in the event that it becomes a nuisance, or even because the landlord has the authority to require that certain conditions be placed on the use of the dog by its owner. See *Buturla* v. *St. Onge*, supra, 496–98.

Indeed, to construe the term "keeper" more liberally would produce an anomalous result, namely, that both the nonowner of a dog and its owner would be held to the same "heavy liability imposed by [§ 22-357]"; *Hancock* v. *Finch*, supra, 126 Conn. 123; even when the evidence establishes that the former exercised considerably less control over the dog than the latter. Such a result also would be inconsistent with the principle that statutes in derogation of the common law, including § 22-357; see footnote 10 of this opinion; are to be construed narrowly. See, e.g., *Vitanza* v. *Upjohn Co.*, 257 Conn. 365, 381, 778 A.2d 829 (2001). As we recently have reiterated, "[w]hen a statute is in derogation of common law or creates a liability where formerly none existed, it should receive a strict construction and is not to be extended, modified, repealed or enlarged in its scope by the mechanics of [statutory] construction. . . . [T]he operation of a statute in derogation of the common law is to be limited to matters clearly brought within its scope." (Internal quotation marks omitted.) *Durrant* v. *Board of Education*, 284 Conn. 91, 109, 931

A.2d 859 (2007). We therefore are not free to construe the term "keeper" so broadly as to include persons authorized to exercise only limited dominion and control over a dog. Such persons include a landlord who, like the defendant in the present case, may impose some restrictions on the tenant's use and handling of the dog but who otherwise bears no responsibility for the care, maintenance or control of the dog.[11]

The plaintiff contends that the jury reasonably could have found that the defendant harbored Salinas' dog because Salinas was a live-in employee of the defendant, not a tenant,[12] and the defendant exercised a degree of control over the dog. The plaintiff maintains that, in light of these facts, the jury reasonably could have found that the defendant was a keeper of Salinas' dog for purposes of § 22-357. We disagree. As the Appellate Court explained, we do not focus on the relationship of landlord and tenant in determining whether the landlord is a keeper of the tenant's dog; rather, we look to the nature and extent of the control that the landlord had over the tenant's dog. Prior cases of this court and the Appellate Court stand for the proposition that ownership of the premises where a dog lives, "unaccompanied by any evidence of caretaking of the dog or actual control over its actions"; *Falby* v. *Zarembski*, supra, 221 Conn. 20 n.3; is not enough to hold a landlord or other property owner strictly liable for damage caused by the dog. This is true whether the dog's owner

---

[11] As the Appellate Court observed, "a review of the laws in sibling states would indicate the same result." *Auster* v. *Norwalk United Methodist Church*, supra, 94 Conn. App. 622, citing annot., 87 A.L.R.4th 1004, 1072–73 (1991).

[12] The plaintiff also notes that the church rector lived in the same building where Salinas and his family lived and that Salinas paid no rent for the apartment.

is a live-in employee,[13] a tenant or merely a friend of the landlord.[14] In the present case, there was no evidence that the defendant exerted control over Salinas' dog in a manner similar to that of an owner. Accordingly, we agree with the Appellate Court that the plaintiff failed to establish that the defendant was a keeper

[13] The plaintiff relies on *Larsen* v. *MacDonald*, 5 Conn. Sup. 150 (1937), to support her claim that an employer may be found liable under § 22-357 for damage caused by a dog owned by an employee residing on the employer's premises. We agree, of course, that an employer may be liable under § 22-357 for damage caused by a live-in employee's dog if the facts warrant such a finding. We apply the same analysis, however, whether the employee is a live-in employee or merely brings the dog to work with him every day. In *Larsen*, the owner of a restaurant was found to be the keeper of an employee's dog. In contrast to the present case, however, the employee not only lived with the employer "as a member of [the employer's] personal household" in an apartment above the restaurant; id., 151; the employee's dog "was brought to [the employer's] premises in response to [the employer's] invitation and remained there and was sheltered and cared for there . . . with [the employer's] permission or consent." Id., 152. Furthermore, "the . . . dog . . . was subjected to little or no actual personal control [with respect to] his movements, by either [the employer or the employee]. He was permitted . . . without restraint to wander in and about the premises; was fed by the help in the kitchen . . . and slept most of the time in a [bed]room . . . occupied by [the employer's] son . . . ." Id. At other times, the dog simply slept in the restaurant itself. Id. On the basis of this and other evidence, the trial court concluded that the dog was more a "habitue of [the employer's] place of business" than a member of the employer's household. Id. Under the circumstances, the court found that the employer was a keeper of the dog within the meaning of the dog bite statute. Id. The court's finding in *Larsen*, which was fully supported by the facts of that case, is consistent with our conclusion that a person will not be subject to strict liability under § 22-357 as a keeper of a dog unless that person's relationship to the dog is similar to the relationship between a dog and its owner.

[14] The plaintiff cites to *Simmons* v. *Welch*, 48 Conn. Sup. 564, 571, 854 A.2d 114 (2003), for the principle that a fact finder reasonably may infer that a landlord is a keeper of its tenant's dog under § 22-357 when the dog is permitted to occupy an area of the premises over which the landlord retains ultimate control. To the extent that *Simmons* stands for that broad a proposition, we disagree with it. The mere fact that a landlord permits a tenant to allow his dog to occupy the common areas of the premises is insufficient to support a finding that the landlord is a keeper of the dog because such evidence falls short of the proof necessary to demonstrate that the landlord's responsibility for the dog is similar to that of an owner.

.

of the dog. This is not to say, of course, that the defendant may not have been negligent in failing to take reasonable precautions to protect against the attack that occurred in the present case, particularly in view of the fact that Salinas' dog previously had bitten a church employee. We conclude only that the evidence was insufficient to hold the defendant strictly liable to the plaintiff as a keeper of the dog under § 22-357. On retrial, the plaintiff will have the opportunity to establish her common-law negligence claim against the defendant.

II

We turn next to the plaintiff's claim that the Appellate Court improperly concluded that the trial court had abused its discretion in permitting the plaintiff to introduce evidence of the defendant's liability insurance under § 4-10 of the Connecticut Code of Evidence. The plaintiff contends that the evidence was relevant to the disputed issue of whether the defendant had control over Salinas' dog. We reject the plaintiff's claim.[15]

The following additional facts are necessary to our disposition of this claim. At trial, the plaintiff sought to introduce into evidence a portion of the minutes of a July 16, 2001 meeting of the defendant's board of trustees. Those minutes include a discussion of the present action, which then was pending against the defendant, and provide in relevant part: "[It has been] brought to our attention that the [church] has been named as first defendant in a lawsuit (for $15,000 or more) brought by a woman who was bit by [Salinas'] dog, as she was attempting to enter [Salinas'] apartment. The claimant is charging severe physical and emotional

---

[15] Although our resolution of the plaintiff's first claim is dispositive of this appeal, we nevertheless address the plaintiff's second claim because the issue of the defendant's control of the dog may arise at a trial on the plaintiff's common-law negligence claim.

scarring. The church has paid all her medical bills, and the lawsuit has been turned over to the underwriter by the insurance company. An adjuster will contact [a representative of the church] to set up an appointment and [we have been apprised of] the importance of removing the dog from the church property. If the insurance company discovers the dog is still on the premises, it could jeopardize our insurance coverage."

The defendant claimed that the minutes were inadmissible under § 4-10 of the Connecticut Code of Evidence because they referred to the defendant's liability insurance. The trial court concluded that the minutes were relevant to the issue of control and, therefore, overruled the defendant's objection. The court, however, ordered the redaction of the portion of the minutes referring to, inter alia, the defendant's payment of the plaintiff's medical bills. The Appellate Court agreed with the defendant's contention that the evidence was unnecessary to establish the defendant's control over the premises because the defendant's ownership and control of the premises were not in dispute. See *Auster* v. *Norwalk United Methodist Church*, supra, 94 Conn. App. 624. The Appellate Court also agreed with the defendant that the evidence was inadmissible to establish that the defendant had control over Salinas' dog because the fact that the defendant owned the property did not tend to establish that the defendant exercised control over the dog such that the defendant qualified as a "keeper" of the dog under § 22-357. Id.

"[E]vidence that a defendant carries liability insurance is inadmissible on the issue of the defendant's negligence. Conn. Code Evid. § 4-10 (a). There are two primary reasons for this principle of exclusion. First, evidence of liability insurance generally is not probative of whether the insured acted negligently. E.g., *Walker* v. *New Haven Hotel Co.*, 95 Conn. 231, 235, 111 A. 59

(1920) (evidence that defendant is insured has no force or weight as evidence of negligence). Second, the exclusion of evidence of a defendant's insurance coverage prevents the jury from improperly rendering a decision or award based upon the existence or nonexistence of liability coverage rather than upon the merits of the case. Conn. Code Evid. § 4-10 (a), commentary." (Internal quotation marks omitted.) *Vasquez* v. *Rocco*, 267 Conn. 59, 65–66, 836 A.2d 1158 (2003). "Our rules of evidence do not mandate the exclusion of evidence of liability insurance coverage, however, when it is offered for another purpose, such as to prove [agency, ownership, control or] the bias or prejudice of a witness. Conn. Code Evid. § 4-10 (b)." *Vasquez* v. *Rocco*, supra, 66.

We agree with the Appellate Court that the admission of evidence establishing the fact that the defendant was covered by liability insurance was both improper and prejudicial. Because it was undisputed that the defendant was the owner of the premises where the attack occurred, the minutes were unnecessary to establish the defendant's ownership or control of the premises. The evidence also was inadmissible to demonstrate that the defendant exercised control over Salinas' dog. To the extent that the defendant's ownership of the premises may be relevant to the issue of the defendant's control over the dog, the issue of ownership was not in dispute. There also was no dispute that the defendant had the authority to require Salinas to remove his dog from the premises; indeed, as we previously have indicated, that is exactly what the defendant did following the dog's attack of the plaintiff. Consequently, there was no justification for the court to have permitted the plaintiff to present evidence of the defendant's liability insurance coverage.

The judgment of the Appellate Court is affirmed.

In this opinion ROGERS, C. J., and VERTEFEUILLE and SCHALLER, Js., concurred.

NORCOTT, J., dissenting. Virginia Auster, the plaintiff in this case, has been bitten thrice. First, on the evening of July 27, 2000, by Shadow, a mixed breed pit bull owned by the defendant Pedro Salinas, the sexton for the named defendant, Norwalk United Methodist Church,[1] while she attended a meeting of a charitable organization held at the defendant's building. She next was bitten by the Appellate Court's judgment disturbing the trial court's discretionary decision not to set aside the jury's verdict holding the defendant strictly liable to the plaintiff pursuant to the dog bite statute, General Statutes § 22-357.[2] *Auster* v. *Norwalk United Methodist Church*, 94 Conn. App. 617, 624, 894 A.2d 329 (2006). Today, the majority of this court has inflicted the plaintiff's third, and hopefully final, injury with its affirmance of the Appellate Court's intrusion. In my view, the majority improperly discounts the significance of the restrictions that the defendant, through its pastor, David Houston, placed on Shadow after he bit Michelle Langois, the defendant's preschool director. I also disagree with the majority's conclusion that the Appellate Court correctly determined that the trial court had abused its

---

[1] Salinas was originally a defendant in this action but the plaintiff withdrew her claims against him. Hereafter, references in this opinion to the defendant are to Norwalk United Methodist Church.

[2] General Statutes § 22-357 provides: "If any dog does any damage to either the body or property of any person, the owner or keeper, or, if the owner or keeper is a minor, the parent or guardian of such minor, shall be liable for such damage, except when such damage has been occasioned to the body or property of a person who, at the time such damage was sustained, was committing a trespass or other tort, or was teasing, tormenting or abusing such dog. If a minor, on whose behalf an action under this section is brought, was under seven years of age at the time the damage was done, it shall be presumed that such minor was not committing a trespass or other tort, or teasing, tormenting or abusing such dog, and the burden of proof thereof shall be upon the defendant in such action."

discretion by admitting into evidence the minutes of the defendant's July 16, 2001 board of trustees meeting, in violation of § 4-10 of the Connecticut Code of Evidence.[3] Because I agree with Judge Berdon's well reasoned dissent from the judgment of the Appellate Court; see *Auster* v. *Norwalk United Methodist Church*, supra, 624; and would reverse the judgment of the Appellate Court, I respectfully dissent.

I

I begin by noting my agreement with the facts and procedural history generally stated by the majority opinion. I also agree with the majority's statement of the standard of review, namely, that "[t]he trial court possesses inherent power to set aside a jury verdict which, in the court's opinion, is against the law or the evidence. . . . [The trial court] should not set aside a verdict where it is apparent that there was some evidence upon which the jury might reasonably reach their conclusion, and should not refuse to set it aside where the manifest injustice of the verdict is so plain and palpable as clearly to denote that some mistake was made by the jury in the application of legal principles . . . . Ultimately, [t]he decision to set aside a verdict entails the exercise of a broad legal discretion . . . that, in the absence of clear abuse, we shall not disturb." (Internal quotation marks omitted.) *Jackson* v. *Water Pollution Control Authority*, 278 Conn. 692, 702, 900 A.2d 498 (2006). Indeed, "[t]he standards governing our review of a sufficiency of evidence claim are well established and rigorous. . . . [I]t is not the function of this court to sit as

---

[3] Section 4-10 (a) of the Connecticut Code of Evidence provides: "(a) General rule. Evidence that a person was or was not insured against liability is inadmissible upon the issue of whether the person acted negligently or otherwise wrongfully.

"(b) Exception. This section does not require the exclusion of evidence of insurance against liability when offered for another purpose, such as proof of agency, ownership, or control, or bias or prejudice of a witness."

the seventh juror when we review the sufficiency of the evidence . . . rather, we must determine, in the light most favorable to sustaining the verdict, whether the totality of the evidence, including reasonable inferences therefrom, supports the jury's verdict . . . . In making this determination, [t]he evidence must be given the most favorable construction in support of the verdict of which it is reasonably capable. . . . In other words, [i]f the jury could reasonably have reached its conclusion, the verdict must stand, even if this court disagrees with it." (Internal quotation marks omitted.) *Carrano* v. *Yale-New Haven Hospital*, 279 Conn. 622, 645–46, 904 A.2d 149 (2006). Of course, "[i]f the jury, without conjecture, could not have found a required element of the cause of action, it cannot withstand a motion to set aside the verdict." (Internal quotation marks omitted.) *Glazer* v. *Dress Barn, Inc.*, 274 Conn. 33, 50, 873 A.2d 929 (2005).

In *Falby* v. *Zarembski*, 221 Conn. 14, 19, 602 A.2d 1 (1992), this court set forth the general principles governing the application of § 22-357, which "imposes strict liability on the owner or keeper of any dog that does damage to the body or property of any person. A keeper is defined [by the statute] as any person, other than the owner, harboring or having in his possession any dog. . . . To harbor a dog is to afford lodging, shelter or refuge to it. . . . [P]ossession cannot be fairly construed as anything short of the exercise of dominion and control [over the dog] . . . ." (Citations omitted; internal quotation marks omitted.) Indeed, I agree generally with the majority's reliance on this court's decision in *Falby* for the proposition that, under § 22-357, "a nonowner of a dog cannot be held strictly liable for damage done by the dog to another in the absence of evidence that the nonowner was responsible for maintaining and controlling the dog at the time the damage was done. As we indicated in *Falby*, such proof *generally* will consist

of evidence that the nonowner was feeding, giving water to, exercising, sheltering or otherwise caring for the dog when the incident occurred." (Emphasis added.)

Unlike the majority, however, I would conclude that the defendant's claims on appeal from the judgment of the trial court fall victim to the well settled standard of review applicable to motions to set aside the verdict. I wish to emphasize in detail particular facts that, in my view, require the affirmance of the trial court's decision not to disturb the jury's verdict in this case, because they establish the defendant's control over Shadow in the wake of his attack on Langois, which had preceded his assault on the plaintiff.[4] In that incident, Langois was startled to hear Shadow growling behind her as she exited the defendant's building to go meet her preschool students on the playground. When she turned around, Shadow grabbed Langois' foot with his mouth, biting through her sneaker and breaking the skin while holding her foot in his mouth and shaking his head.[5] Langois' screams attracted the attention of another teacher at the preschool and Carmen Salinas, the wife of Pedro Salinas, who was able to stop the attack by pulling at Shadow and hitting him repeatedly. Numerous children enrolled in the defendant's preschool had the misfortune of witnessing this, in my view, appalling incident.

Langois, not surprisingly, insisted to Houston, the pastor at the time of her attack, that the defendant order Salinas to get rid of the dog, and she also expressed her wishes to that effect to the school's directors and the defendant's trustees. Houston's charitable and forgiving

---

[4] In addition to Langois, Shadow also previously had bitten a cable repairman who came to work on Salinas' apartment, an incident that the defendant was not aware of at the time of the plaintiff's injury. This bite led to Shadow being quarantined by the city of Norwalk. Thereafter, Norwalk animal control officials quarantined Shadow for another two weeks after he killed and buried a hapless skunk that had dared to invade the defendant's garbage pile.

[5] The resulting puncture wound required Langois to get a tetanus shot.

nature, however, allowed him to see Shadow's value as a pet for the Salinas family, and he instead directed a "compromise" requiring that the dog: (1) be kept inside the basement of the parish house from 6 a.m. until 7 p.m., with no presence outside during the time when the nursery school was open; and (2) be leashed to an adult or chained to the building if he was outside after 7 p.m.[6] The defendant did not, however, erect "beware of dog" signs.

These restrictions did not abate fully the concerns about Shadow, as, in July, 1999, he scratched Barbara Gale, another congregant attending a charity meeting at the defendant's facility, requiring her to receive medical attention.[7] The defendant's trustees subsequently discussed this incident at their monthly meeting. Indeed, Jim Stinson, who succeeded Houston and served as pastor from July, 1999 through June, 2002, after Houston already had put the dog rules in place, described Shadow as a "temperamental" and "snarly dog."

Finally, other evidence tending to support the jury's verdict on the control element includes Salinas' testimony describing Shadow as a "watch dog" for the church. Indeed, Bob Miller, a friend of Salinas, who also was the treasurer and a trustee of the defendant, paid for Shadow's ultimate demise after he bit the plaintiff.[8]

---

[6] When the dog was chained outside, he was secured to the railing of the back steps of the defendant's building.

[7] Salinas paid for Gale's visit to a physician and no claim was filed against the defendant at that time.

[8] Query: What took so long for Shadow to take his final trip to the proverbial farm in Vermont? See footnote 4 of this dissenting opinion and General Statutes § 22-358 (c) (Providing that subject to hearing and notice requirements, "[w]hen any dog, cat or other animal has bitten a person on the premises of the owner or keeper of such dog, cat or other animal, the Chief Animal Control Officer, any animal control officer, any municipal animal control officer or regional animal control officer may quarantine such dog, cat or other animal on the premises of the owner or keeper of such dog, cat or other animal. The commissioner, the Chief Animal Control Officer, any animal control officer, any municipal animal control officer or any

In my view, the cases cited by the majority and the defendant do not require disturbance of the jury's verdict or necessarily support the proposition that this court cannot "construe the term 'keeper' so broadly as to include persons authorized to exercise only limited dominion and control over a dog. Such persons include a landlord who, like the defendant in the present case, may impose some restrictions on the tenant's use and handling of the dog but who otherwise bear no responsibility for the care, maintenance or control of the dog." In *Falby* v. *Zarembski*, supra, 221 Conn. 19, which is relied upon by the majority, this court concluded that there was insufficient evidence to hold the defendant, a home improvement contracting business, strictly liable under § 22-357 when "the evidence presented at trial established that [the employer], through its president . . . had knowledge that [its employee, the dog's owner] was in the habit of bringing the pit bull terrier with him to various work sites, that it acquiesced in the presence of the dog at these sites and that it could have prohibited [the employee] from bringing the dog with him to work if it had so desired." The court stated that, "[a]lthough such facts may implicate [the employer] in some way in the attack of the dog on [the plaintiff, a passing letter carrier], they do not indicate that it harbored or had possession of the dog and thus do not justify the imposition of strict liability under § 22-357. There was no evidence that [the employer] fed, watered, housed or otherwise cared for the dog. There was no evidence that it exercised any form of

regional animal control officer may make any order concerning the restraint or disposal of any biting dog, cat or other animal as the commissioner or such officer deems necessary. Notice of any such order shall be given to the person bitten by such dog, cat or other animal within twenty-four hours."); see also General Statutes § 22-358 (f) ("[t]he owner of any dog, cat or other animal which has bitten or attacked a person and has been quarantined pursuant to subsection [c] of this section may authorize the humane euthanization of such dog, cat or other animal by a licensed veterinarian at any time before the end of the fourteenth day of such quarantine").

control over the actions of the dog. Contrary to the plaintiffs' claim, control over the premises where the dog inflicted the injuries or over [its employee], by virtue of the employment relationship, did not convert [the employer] into a keeper of [its employee's] dog while it was present at the work site." Id., 19–20; see also id., 17–18 (noting that employer and its employees never "voiced an objection to or imposed any conditions on the dog's presence" and that dog was not tied up or leashed on job site).

Similarly, the defendant relies on *Buturla* v. *St. Onge*, 9 Conn. App. 495, 519 A.2d 1235, cert. denied, 203 Conn. 803, 522 A.2d 293 (1987). In that case, the Appellate Court concluded that the trial court properly granted the defendant landlords' motions for summary judgment on the ground that they could not be held strictly liable under § 22-357 because they had not exercised any control over their tenant's offending dog, which had bitten the tenant's guest while in the tenant's apartment. Id., 496–98. In *Buturla*, it was undisputed that the landlords had consented to the dog's presence in the apartment, but also that the landlords had never "fed or taken care of the dog, nor had the dog ever been allowed to roam in or use the yard abutting the building. The affidavits stated further that the only common area used by the dog was the staircase leading from the apartment to the street. That staircase was used only as access to and from the street." Id., 496. The Appellate Court emphasized the tenant's right to exclusive occupancy and control of his apartment, and cited this court's decision in *Hancock* v. *Finch*, 126 Conn. 121, 123, 9 A.2d 811 (1939), for the proposition that, "in order to harbor or possess a dog, some degree of control over the dog must be exercised." *Buturla* v. *St. Onge*, supra, 498. The court distinguished cases wherein landlords and employers had direct control over the dogs at issue, and concluded that "neither the

definition of harborer nor the definition of possession" permitted the landlords to be held liable in that case. Id.

The lack of a case directly on point with respect to the particular facts of the present case is not akin to the dog that did not bark. This is because both *Falby* and *Buturla* are readily distinguishable since, unlike the defendant in the present case, the defendants in those cases never undertook to assert any kind of direct authority over the specific dogs at issue, in response to a *known problem*.[9] In contrast, the facts of this case support the jury's verdict that Shadow was, in fact, the defendant's problem from the time of his arrival in Salinas' apartment until the final bite, and that the defendant took some targeted steps, however ineffectual, to assert control over the dog by ordering it confined and chained. Indeed, I find it significant a trustee of the defendant paid for Shadow's destruction after the dog bit the plaintiff. Accordingly, I conclude that the Appellate Court improperly determined that the trial court abused its discretion by denying the defendant's motion to set aside the verdict.

## II

Finally, I again agree with Judge Berdon, and conclude that the trial court did not abuse its wide discretion[10] by admitting into evidence the minutes of the

[9] Accordingly, I also disagree with the defendant's reliance on *Gilbert* v. *Christiansen*, 259 N.W.2d 896, 897–98 (Minn. 1977) (rejecting plaintiff's argument that apartment complex rules and regulations gave its managers right of control over tenant's dog for purposes of strict liability under state dog bite statute), and *Garrard* v. *McComas*, 5 Ohio App. 3d 179, 182, 450 N.E.2d 730 (1982) (trailer park's pet maintenance rules did not give it control over tenant's dog for purposes of strict liability under state dog bite statute). In my view, these cases similarly are distinguishable on their facts because they involve generally applicable rules, rather than the targeted measures of control employed by the defendant in the present case.

[10] See, e.g., *Hayes* v. *Camel*, 283 Conn. 475, 483, 927 A.2d 880 (2007) (trial court's relevancy determination is reviewed for abuse of " 'wide discretion' "); see also *Vasquez* v. *Rocco*, 267 Conn. 59, 65, 836 A.2d 1158 (2003) (determination under Conn. Code Evid. § 4-10 reviewed for abuse of discretion).

defendant's July 16, 2001 board of trustees meeting pursuant to § 4-10 of the Connecticut Code of Evidence.[11] See *Auster* v. *Norwalk United Methodist Church,* supra, 94 Conn. App. 626 (*Berdon, J.,* dissenting). Specifically, these minutes refer to the early pendency of this action against the defendant, and indicate that "the lawsuit has been turned over to the underwriter by the insurance company. An adjuster will contact [Stinson] to set up an appointment and [Bruce Root, a member of the board of trustees] emphasized *the importance of removing the dog from the church property. If the insurance company discovers the dog is still on the premises, it could jeopardize our insurance coverage.*" (Emphasis added.)

Although evidence of insurance is inadmissible to prove liability under § 4-10 (a) of the Connecticut Code of Evidence, that "section does not require the exclusion of evidence of insurance against liability when offered for another purpose, such as proof of agency, *ownership, or control,* or bias or prejudice of a witness." (Emphasis added.) Conn. Code Evid. § 4-10 (b); see also *Vasquez* v. *Rocco,* 267 Conn. 59, 66, 836 A.2d 1158 (2003) ("[o]ur rules of evidence do not mandate the exclusion of evidence of liability insurance coverage, however, when it is offered for another purpose, such as to prove the bias or prejudice of a witness"). The majority casts this evidence as irrelevant and demonstrating only the defendant's control over its own premises, a fact not in dispute. In my view, however, the minutes tend to prove that the board members viewed Shadow and his attendant problems as a matter within their control. Accordingly, I conclude that the Appellate Court improperly determined that the trial court abused its discretion by admitting the minutes into evidence.

---

[11] See footnote 3 of this dissenting opinion for the text of Conn. Code Evid. § 4-10.

As the majority points out in footnote 15 of its opinion, the plaintiff rightfully is not yet foreclosed from compensation for her injuries, as this case will be retried on her common-law negligence claims. That the defendant remains exposed to a pillaging by jury when the case is retried is, however, small solace to me. I would, therefore, reverse the judgment of the Appellate Court and reinstate the jury's verdict in this case. Accordingly, I respectfully dissent.